# UNITED STATES v. KEITEL.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 286.　Argued October 22, 23, 26, 1908.—Decided December 14, 1908.

Where an indictment is quashed because the facts charged are not within the statute the Government has an appeal under the act of March 2, 1907, c. 2564, 34 Stat. 1246.

While abstractly there may be a difference between "interpretation" and "construction," in common usage the words have the same significance; and "construction" as employed in the act of March 2, 1907, c. 2564, 34 Stat. 1246, includes interpretation.

Under §§ 2347–2350, Rev. Stat., a person who is qualified to enter coal lands in his own behalf is prohibited from making an entry ostensibly for himself but in fact as agent for another who is disqualified; and an agreement to obtain land for a disqualified person through entries made by qualified persons constitutes the offense of conspiracy against the United States under § 5440, Rev. Stat.

The provisions of the Revised Statutes in regard to coal lands limit the amount of land to be taken by each person entering; and while there may be no statutory limitation on the right of the entryman to

sell after acquisition, the statute, according to its plain meaning, will be enforced as not permitting a person to acquire land as agent for a disqualified person and so defeat the purpose of the statute.

A person cannot enter land through an agent, even though the agency be undisclosed, if he is disqualified to enter the land himself.

The authoritative construction of a statute in a civil case may be applied in a criminal case subsequently arising; although *United States* v. *Trinidad Coal Co.*, 137 U. S. 160, was a suit to annul patents to coal lands the decision in that case that qualified persons cannot enter coal lands under §§ 2347–2350, Rev. Stat., as agents, or on behalf of, disqualified persons, will be followed as to the construction of those statutes in sustaining indictments under § 5440 for conspiracy to defraud the United States by obtaining coal lands by entries in violation of the statutes as so construed.

A charge of conspiracy to defraud the United States under § 5440, Rev. Stat., can be predicated on acts made criminal after the enactment of the statute. *Hyde* v. *Shine*, 199 U. S. 62.

Even though a word may have a common-law significance which should control if the word stood alone, in the construction of a statute the word must be given the broader meaning resulting from the words with which it is accompanied; and so *held* that the word "defraud," in § 5440, Rev. Stat., when construed in connection with the accompanying words "in any manner or for any purpose" includes obtaining public lands in violation of the statutes as to quantities to be taken by, and qualifications of, entrymen, notwithstanding the United States be paid the price of the lands. *Hyde* v. *Shine*, 199 U. S. 62.

An amendment to a statute will be construed to relate to the present subject thereof and not to be new legislation in regard to other subjects; and the act of July 7, 1898, c. 578, 30 Stat. 718, amending § 4746, Rev. Stat., related solely to the subject of pensions and bounty land claims, and simply extended the statute to the use of fraudulent papers in regard to such claims, and a violation of its provisions as amended cannot arise from acts in connection with entries other than those on pensions and bounty claims.

Under the act of March 2, 1907, c. 2564, 34 Stat. 1246, this court on direct writ of error only has jurisdiction to review the particular questions decided by the court below for which the statute provides, and the whole case is not open to review.

157 Fed. Rep. 396, reversed.

THE facts are stated in the opinion.

*The Attorney General* and *The Solicitor General*, with whom *Mr. Edwin W. Lawrence*, Special Assistant to the Attorney General, was on the brief, for the United States:

The charge against defendants of conspiracy to defraud the United States is specifically made a crime by § 5440, Rev. Stat. Arguments that, because the coal land laws do not expressly make it a crime for an individual to obtain lands in excess of the designated quantity, it is not criminal to do so, are fallacious. Those laws furnish an occasion for conspiracy to defraud under § 5440, just as other laws and departmental regulations furnish the occasion for crimes under statutes which otherwise have no connection with them. See *Caha* v. *United States*, 152 U. S. 211; *Curley* v. *United States*, 130 Fed. Rep. 1.

The right of acquisition, not of alienation, is involved here. The statute expressly limits the right to acquire and it is with this limitation that we are concerned. The right of an entryman to alienate does not accrue, at least until an application is made, and the conspiracy is charged to have been formed before that time. *Williamson* v. *United States*, 207 U. S. 425; *Adams* v. *Church*, 193 U. S. 511, and *United States* v. *Budd*, 144 U. S. 154, distinguished. The question is, Has an individual the right to acquire from the United States more than the specified quantity of coal lands?

Any lands obtained as a result of the execution of these conspiracies can be recovered by the Government on the ground that they were obtained by fraud. *United States* v. *Trinidad Coal Co.*, 137 U. S. 160. See also *United States* v. *Lonabaugh*, 158 Fed. Rep. 314. The scheme necessarily involved intentional concealment of facts in order to deceive and mislead the land officers and obtain from the United States the possession of coal lands which defendants knew they could not obtain without such concealment.

The history of § 5440, and the decisions construing and applying the section conclusively show that Congress did not intend to confine "conspiracies to defraud" to the offenses known

as such to the common law, but that it was intended that the section should be applied so as to include frauds upon the United States of every kind and character. Congress aimed to protect the Government against those in whom avarice and cupidity are stronger than the desire for good government and honest execution of the laws. *United States* v. *Stone,* 135 Fed. Rep. 392; *Hyde* v. *Shine,* 199 U. S. 62; *Dealy* v. *United States,* 152 U. S. 539; *United States* v. *Lonabaugh,* 158 Fed. Rep. 314; *United States* v. *Robbins,* 157 Fed. Rep. 999; *Stearns* v. *United States,* 152 Fed. Rep. 900; *Bradford* v. *United States,* 152 Fed. Rep. 617; *United States* v. *Owen,* 32 Fed. Rep. 534; *United States* v. *Gordon,* 22 Fed. Rep. 250; *United States* v. *Hirsch,* 100 Fed. Rep. 33; *Curley* v. *United States,* 195 Fed. Rep. 628; *United States* v. *Morse,* 161 U. S. 429; *United States* v. *Haas,* not yet reported; *United States* v. *Stone,* 135 Fed. Rep. 392; *McGregor* v. *United States,* 134 U. S. 187.

Entry under the coal land laws is a matter within the jurisdiction of the Secretary of the Interior under § 4746, Rev. Stat. In two unreported cases (*United States* v. *Dodson, United States* v. *Fout,* Eighth Circuit) it has been held that the words "pertaining to any other matter within the jurisdiction of the Secretary of the Interior" must be interpreted according to their plain and literal meaning, and therefore include matters pertaining to coal land entries. The purpose of the amendment of 1898 was to extend the operation of the statute, and in conformity with this purpose the language of the statute should be construed broadly.

The regulation of the Interior Department requiring an entryman to state in writing that he is making the entry solely for his own benefit and not directly or indirectly in behalf of another merely requires a positive statement of what it would be in violation of the statute and a fraud to conceal. The law in limiting the amount of land one person or association may acquire necessarily contemplates that entry shall be made solely for the benefit of the entryman. Otherwise the limitation would be wholly ineffectual. The defendants are not

charged with a violation of or a conspiracy to violate the regulation. They made or were to make the statement which the regulation required, but in making such statement falsely and fraudulently and filing it they committed or would commit crimes defined and punished by §§ 5440 and 4746. The regulation merely furnishes the opportunity for the commission of a statutory crime.

The Interior Department has always held that an entry could not be made by one person for the benefit of another. *Adolph Peterson et al.*, 6 L. D. 371; *North Pacific Coal Co.*, 7 L. D. 422. These decisions deal with cash entries. The same ruling is applied to cash entries under preference right in *Union Coal Co.*, 17 L. D. 351.

The practice of the Land Office and the regulations of the Interior Department recognize the right of a person to make an entry through an agent when the name of the principal is disclosed. In such a case the principal takes the benefit of the act and cannot make another entry thereunder. To permit entries to be made for undisclosed principals would nullify the statutory provision that one person or association of persons can make only one entry, for it would throw wide open the door for fraud.

The *Trinidad case* is on all fours with these cases, aside from the single point that there the corporation itself was at the inception of the scheme disqualified to make an entry under the coal land laws, while in the present cases the corporation to which the lands were to be conveyed was not at first disqualified to make an entry in its own name. There is no difference between a case where the corporation is disqualified before any act is done in performance of the conspiracy, and one where the corporation is necessarily to become disqualified during the execution of the conspiracy.

The cases of *Williamson* v. *United States, Adams* v. *Church*, and *United States* v. *Budd, supra*, construing the timber and stone act, cannot apply to coal land entries; the provisions of the coal land laws are very different from those of the timber

and stone act. Coal land entries are known as cash entries or cash entries under a preference right. In the former an application is made, the money paid and receipt taken therefor at the same time and all as one transaction. The entry is then complete. The entryman may present his receipt and obtain a patent, but title passes when the receipt is taken. It is apparent that there can be no such thing as an assignment of any right in a cash entry. Until application is made there is no right existing, and at the time application is made, other steps are taken which complete the entry. In the case of cash entries under a preference right a declaratory statement is filed, and within one year after, application for entry must be made. At the time the application is made the money is paid, receipt taken and title passes the same as in the case of a cash entry. For the same reasons as exist there, it is apparent that there can be no such thing as an assignment of any right in a cash entry under a preference right.

The general mineral act of 1872 has never been held by the courts or the Interior Department as being applicable to coal lands. No coal land entry was ever made under it. The fact that under the general mineral act one person may make any number of entries cannot be held to overrule the manifest purpose of Congress to limit the right to enter coal lands.

*Mr. Edwin H. Park* and *Mr. Frederick N. Judson,* with whom *Mr. Tyson S. Dines* and *John F. Green* were on the brief, for defendants in error:

There are no common-law offenses against the United States. Any offense which may be the subject of criminal procedure in a court of the United States, must be an act committed or omitted in violation of a public law of the United States either prohibiting it or commanding it. *United States* v. *Hudson,* 7 Cranch, 32; *United States* v. *Cooledge,* 1 Wheat. 415; *United States* v. *Wiltenberger,* 5 Wheat. 76; *Manchester* v. *Massachusetts,* 139 U. S. 240; *United States* v. *Eaton,* 144 U. S. 678; *United States* v. *Britton,* 108 U. S. 199; *United States* v. *Clayton,*

2 Dill. 219; *United States* v. *Manion*, 44 Fed. Rep. 800; *Todd* v. *United States*, 158 U. S. 278.

A requirement in a rule or regulation of a department cannot make any act or neglect to act a criminal offense in the absence of a statute making such act or neglect a criminal offense. *United States* v. *Eaton*, 144 U. S. 677; *Caha* v. *United States*, 152 U. S. 211; *Williamson* v. *United States*, 207 U. S. 425.

Perjury cannot be assigned upon an affidavit before a notary public by preëmptor of coal land under §§ 2348, 2349, Rev. Stat. *United States* v. *Manion*, 44 Fed. Rep. 800.

Congress, in the public land laws, wherever considerations of public policy prohibited pre-contracts of alienation, has specifically enacted the prohibition in statutes declaring the form of affidavit and assigning perjury for a violation thereof.

In the coal land statute there is no prohibition of alienation · by pre-contract or otherwise, and such prohibition cannot be inferred from any supposed public policy not enacted in a statute. *St. Louis Co.* v. *Montana Co.*, 171 U. S. 650.

On the contrary, Congress intended the free exercise of right of alienation by entrymen by pre-contract and otherwise.

The conspiracy statute, § 5440, has been construed in accordance with these fundamental principles, and as there are no common-law offenses in the United States, criminal conspiracies are punishable only as such when they are distinctly declared in the statute. There must be a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means. It is thus sharply distinguished from conspiracy at common law which has been substantially modified both by judicial decisions and statute in England and in the courts of the several States. *Britton* v. *United States*, 108 U. S. 192; *Pettibone* v. *United States*, 148 U. S. 197; 2 Stephens' Hist. of Crim. Law in Eng., 121–127; 2 Wharton's Crim. Law (10th ed.), § 1356, *a*, *b* and note; Wright's Hist of Crim. Conspiracies (Am. ed.), 6, 68.

The word "defraud" in the second clause must be construed

in the sense of committing a fraud made so by Federal statute. 2 Wharton, *ubi supra.*

The indictment does not state a case of "defraud" at common law. Bouvier's Law Dict., "defraud;" 7 Cyc. 123, "cheats;" 19 Cyc. 387, "false pretenses;" *United States* v. *Wilson,* 44 Fed. Rep. 751; 2 Stephens, *ubi supra.*

The statutory requirement of overt acts in conspiracies against the Government is analogous to and taken from the constitutional requirement in indictments for treason, and this latter has sprung from the dread of constructive treason, and is controlled by considerations of public policy, which prohibit the extension by judicial construction of statutory crimes which are dangerous to liberty. Const. Art. III, § 3; 4 Blackstone, chap. VI; *United States* v. *Hirsch,* 100 U. S. 33; The Federalist, No. XLIII; 2 Curtis' Hist. of Const. 384; Arguments of Erskine in *Gordon, Hardy* and *Horne Tooke cases;* Coke 3, Inst. 23; *Commonwealth* v. *Hunt,* 4 Met. 111; Wright's Hist. of Crim. Conspiracy, 68; 2 Wharton, *supra.*

The conspiracy must therefore be sufficiently charged irrespective of any averment of overt acts, which are merely to afford a *locus penitentiæ. United States* v. *Britton,* 108 U. S. 192; *Pettibone* v. *United States,* 148 U. S. 197; *United States* v. *Taffe,* 86 Fed. Rep. 113.

The United States cannot be defrauded by a citizen's sale of his right of entry and purchase of coal lands when it has not been prohibited by statute.

Constructive fraud, such as is cognizable only in a court of equity, cannot be the basis of a criminal prosecution for conspiracy as no man could tell whether he had committed a crime until the chancellor had passed judgment thereon.

"Fraud" as used in the bankruptcy act involves moral turpitude and does not imply fraud or fraud in law, which may exist without the imputation of bad faith or immorality. *Neal* v. *Clark,* 95 U. S. 704. See also *Hennequin* v. *Clews,* 111 U. S. 676.

"With intent to defraud," as used in the Federal statute,

means a guilty intent. See Nat'l Banking Act, § 5209, Rev. Stat.; Forgery Statute, §§ 5421, 5423, Rev. Stat. It is impossible to define the equitable conception of fraud. 2 Pomeroy Eq. Jurisp. 873; Stephens' Hist. of Crim. Law, 121.

The right of contract for the conveyance of a property right acquired or to be acquired thereafter, is inherent in the citizen, and cannot be made a crime, or in anywise illegal in the absence of any statutory enactment.

The United States, therefore, cannot be defrauded by the exercise by a citizen of the right of alienation by contract, where, for a consideration, deemed satisfactory to himself, he extinguishes his own right. *Trinidad Coal & Coke Co.* v. *United States*, 137 U. S. 161, is not in point, as this is a criminal action, and see *Adams* v. *Church*, 193 U. S. 510; *Hafemann* v. *Gross*, 199 U. S. 342; *Hartman* v. *Butterfield Lbr. Co.*, 199 U. S. 335; *United States* v. *Budd*, 144 U. S. 154; *Myers* v. *Croft*, 13 Wall. 291.

Had Congress intended to prevent the exercise of this right, it would have said so. *France* v. *United States*, 164 U. S. 676.

The *Curley Case*, 130 Fed. Rep. 1, and the *Stone Case*, 135 Fed. Rep. 393, are not in point. In those cases the conspiracies relate directly to the exercise of governmental functions in public service, and in the protection of lives upon the high seas, and involved the invasion, if not violation, of specific statutes and were acts in themselves *mala in se* and not *mala prohibita*.

The second count of the indictment is specifically based upon the statute § 4746, which is distinctly a pension statute and not applicable to the case at bar.

The court may refer to the proceedings in Congress in order to determine the evil sought to be remedied by the enactment of the statute. *Hepburn* v. *Griswold*, 8 Wall. 603; *American Net &c. Co.* v. *Worthington*, 141 U. S. 468, 473; *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Northern Pac. Ry. Co.* v. *United States*, 36 Fed. Rep. 282, 285; *United States* v. *Union Pac. Ry. Co.*, 37 Fed. Rep. 551; *Untermeyer* v. *Freund*, 50 Fed.

Rep. 77, 80; *United States* v. *Pattison*, 55 Fed. Rep. 605, 641; *United States* v. *Wilson*, 58 Fed. Rep. 768; *United States* v. *Hansey*, 79 Fed. Rep. 303. This statute was construed as a pension statute in *Pooler* v. *United States*, 127 Fed. Rep. 509. See also *Edgington* v. *United States*, 164 U. S. 361, construing the statute before its amendment.

The case should be dismissed for want of jurisdiction; the opinion below shows that the decision of the court as to the first count was not based upon a construction of the statute, and that the decision of the court as to the second count was based upon other grounds decided adversely to the United States, which grounds are sufficient to sustain the decision and to quash the indictment.

The Congress, in enacting the law of March 2, 1907, used the word "construction" in its ordinary meaning. When Congress said "construction" it did not mean "interpretation." The courts have long distinguished between interpretation and construction. *Bloomer* v. *Todd*, 3 Wash. Ter. 612; *S. C.*, 19 Pac. Rep. 135, 138; *Proprietors of Morris Aqueduct* v. *Jones*, 36 N. J. Law, 206; *State ex rel. Hastings* v. *Smith*, 35 Nebraska, 13, 22; *People ex rel. Twenty-third Street R. R.* v. *Commissioner of Taxes*, 95 N. Y. 554, 559; *Deane* v. *State*, 159 Indiana, 313; *Terre Haute &c. R. R. Co.* v. *Erdee*, 158 Indiana, 334, 347; *United States* v. *Wiltberger*, 5 Wheat. 76, 96. All that the court below decided was that the case at bar was not within the intention of the statute, because the language of the statute did not authorize the court to say so.

MR. JUSTICE WHITE delivered the opinion of the court.

The United States prosecutes this writ of error upon the assumption that the decision of the District Court was based upon an erroneous construction of the statutes upon which the indictment was founded, and therefore, by virtue of the act of March 2, 1907, c. 2564 (34 Stat. 1246 [1]), the right ob-

---

[1] This act is reproduced in full in note to p. 398, *post*.

tained to review the decision by writ of error direct from this court.

The indictment contained two counts. Without quoting them fully, it suffices to say, for the purposes of the questions which we are called upon to decide, if we have authority to decide them, that the first count charged that the eleven defendants illegally conspired, in violation of § 5440, Rev. Stat., with certain named persons and others unknown, to illegally obtain the title of certain coal lands belonging to the United States. The conspiracy was to be effected by procuring various persons as agents to enter coal lands in their own name, ostensibly for their own benefit but in reality for the use and benefit of the accused and a named organization; the purchases being made by the agents as above stated, not with their own money, but with money of the accused or the corporation, and under agreements to convey the title, when acquired, to the accused or to the corporation, thus enabling the accused and the corporation to obtain coal lands belonging to the United States in excess of the quantity which they were allowed by law to enter. Copious averments were made in the count as to the use of alleged false, fictitious and fraudulent papers in making the entries in question, which papers, as filed and entries made, had for their object and purpose to deceive the land officers of the United States, so as thereby to cause them to allow the entries in the name of the agents on the supposition that the entries were for the benefit of the entrymen, and which entries they would not have had the power to allow under the law, and would not have allowed had the truth been disclosed. The second count charged an illegal conspiracy to do acts made criminal by § 4746, Rev. Stat., in making and presenting, and causing to be made and presented, in connection with the entries of coal land, certain false, forged, fictitious, etc., affidavits and papers.

To clear the approach to the issues to be decided we bring into view the statutes which must be passed on. Section 5440, relating to conspiracies, was amended May 17, 1879, by chang-

ing the penalties imposed by the section as primarily enacted.
As amended this section is as follows, c. 8, 21 Stat. 4:

"SEC. 5440. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years, or to both fine and imprisonment, in the discretion of the court."

The text of §§ 2347, 2348, 2349 and 2350, which provide for the sale of coal lands belonging to the United States, is as follows:

"SEC. 2347. Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall, upon application to the register or the proper land office, have the right to enter, by legal subdivisions, any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority, not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands, where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road.

"SEC. 2348. Any person or association of persons severally qualified, as above provided, who have opened and improved, or shall hereafter open and improve, any coal mine or mines upon the public lands, and shall be in actual possession of the same, shall be entitled to a preference right of entry, under the preceding section, of the mines so opened and improved: *Provided,* That when any association of not less than four persons, severally qualified as above provided, shall have expended not less than five thousand dollars in working and im-

proving any such mine or mines, such association may enter not exceeding six hundred and forty acres, including such mining improvements.

"Sec. 2349. All claims under the preceding section must be presented to the register of the proper land district within sixty days after the date of actual possession and the commencement of improvements on the land, by the filing of a declaratory statement therefor; but when the township plat is not on file at the date of such improvement, filing must be made within sixty days from the receipt of such plat at the district office; and where the improvement shall have been made prior to the expiration of three months from the third day of March, eighteen hundred and seventy-three, sixty days from the expiration of such three months shall be allowed for the filing of a declaratory statement, and no sale under the provisions of this section shall be allowed until the expiration of six months from the third day of March, eighteen hundred and seventy-three.

"Sec. 2350. The three preceding sections shall be held to authorize only one entry by the same person or association of persons; and no association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof, and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions; and all persons claiming under section twenty-three hundred and forty-eight shall be required to prove their respective rights and pay for the lands filed upon within one year from the time prescribed for filing their respective claims; and upon failure to file the proper notice, or to pay for the land within the required period, the same shall be subject to entry by any other qualified applicant."

Section 2351 provides for conflicting claims in designated cases, and thus concludes;

"The Commissioner of the General Land Office is authorized

to issue all needful rules and regulations for carrying into effect the provisions of this and the four preceding sections."

Section 4746 of the Revised Statutes, embraced in the title "Pensions," was amended by the act of July 7, 1898, 30 Stat. 718, c. 578. The section, as amended, is as follows, the amendments which the law of 1898 enacted being printed in italics:

"That every person who knowingly or willfully *makes or aids, or assists in the making* or in any wise procures the making or presentation of any false or fraudulent affidavit, *declaration, certificate, voucher, or papers, or writing purporting to be such,* concerning any claim for pension or payment thereof, or pertaining to any other matter within the jurisdiction of the Commissioner of Pensions *or of the Secretary of the Interior,* or who knowingly or willfully *makes or causes to be made, or aids or assists in the making,* or presents or causes to be presented at any pension agency any power of attorney or other paper required as a voucher in drawing a pension, which paper bears a date subsequent to that upon which it was actually signed or *acknowledged by the pensioner, and every person before whom any declaration, affidavit, voucher, or other paper or writing to be used in aid of the prosecution of any claim for pension or bounty land or payment thereof purports to have been executed who shall knowingly certify that the declarant, affiant, or witness named in such declaration, affidavit, voucher, or other paper or writing personally appeared before him and was sworn thereto or acknowledged the execution thereof, when, in fact, such declarant, affiant, or witness did not personally appear before him or was not sworn thereto or did not acknowledge the execution thereof,* shall be punished by a fine not exceeding five hundred dollars or by imprisonment for a term of not more than five years."

On behalf of the various defendants motions to quash the indictment were filed, which the court granted. The grounds of demurrer were substantially the same, many being addressed to technical attacks upon the sufficiency of the indictment, but in each of the motions the validity of the indict-

ment was assailed upon the ground that neither count stated an offense within the statutes when properly understood.

The court in the reasons given by it for granting the motions to quash substantially held as follows:

1st. That the first count related exclusively to cash entries of coal lands under § 2347, Rev. Stat. That under this section no affidavits or papers were required other than the application to purchase, and therefore that all the allegations of the count respecting false and fictitious affidavits, papers, etc., related to documents required solely by the rules and regulations of the Land Department, which, not being expressly authorized by the statute, could not form the basis of a criminal conspiracy. The papers were therefore put out of view.

2d. That the coal land statutes did not prohibit one who was qualified to enter coal lands from making a cash entry of such lands in his own name, ostensibly for himself but really for the benefit of another, who was disqualified to directly make the entry, even although the ostensible entryman in making the purchase in his own name was really acting as the agent of the disqualified person, paid the price of the land with the money of such disqualified person, and made the entry under an obligation, on the completion of the purchase from the United States, to transfer the land to such disqualified person.

3d. From the import of the coal land statutes thus announced it was decided that a conspiracy to acquire coal lands from the United States by the means stated was not a violation of § 5440, as the acts alleged did not constitute a defrauding of the United States within the meaning of the word defraud as used in the second clause of the section, because that word must be interpreted in a restricted sense, and be given only its assumed common-law significance, and could not be used so as to embrace acts not expressly forbidden by law, upon the theory that their performance was contrary to a public policy which it might be assumed caused the enactment of the statutes.

4th. It was directly held that the conclusions just stated were not in conflict with a previous adjudication of this court construing the coal land laws, as the decision had been rendered in a civil controversy and could not be extended and carried over so as to control the construction of the statute in a criminal prosecution, thus "spelling out" a crime where none was expressly declared in the statute.

5th. As to the second count, it was decided that § 4746 embraced only affidavits, etc., relating to pension and bounty land claims, and the charge of a conspiracy to commit a crime in violation of the section in question could not be based upon allegations of the use of false and fictitious papers, etc., in connection with entries of coal lands.

At the threshold our jurisdiction is questioned because it is asserted the case does not come within the act of March 2, 1907.[1] The grounds of this contention are as follows.

First. That the court below merely held that the facts charged in the indictment were not within the statute, and therefore the indictment and not the statute was interpreted or construed.

Second. Because in any event the court below did not construe, but merely interpreted, the statutes.

As to the first ground, we dispose of it simply by saying that the analysis which we have hitherto made of the decision of the court below demonstrates that the contention is devoid of all merit.

In support of the second ground, it is insisted that the construction of a statute is one thing and its interpretation another and different thing. That abstractly there may be a difference between the two terms is not denied in argument by the United States, and finds support in works of respectable authority.

But, conceding the abstract distinction, and granting for the sake of the argument only that the conclusion of the

---

[1] The act is reproduced in full in note to p. 398, *post.*

VOL. CCXI—25

court below might properly be classed, abstractly speaking, as an interpretation and not a construction of the statute, we think the contention without merit. It may not be doubted that in common usage interpretation and construction are usually understood as having the same significance. This was aptly pointed out in Cooley's Constitutional Limitations, 6th edition, where, after stating the theoretical difference, it is observed (p. 51): "In common use, however, the word construction is generally employed in the law in a sense embracing all that is properly covered by both, when each is used in a sense strictly and technically correct." We think, when the context of the act of March 2, 1907, is taken into view, and the remedial character of the act is given due weight, it becomes apparent that the word "construction" is employed in the statute in its common signification, and hence includes both construction and interpretation, although there may be an abstract difference between them. This being so, it follows that we have jurisdiction to review the action of the court in quashing the indictment.

Putting aside for the moment technical objections to the sufficiency of the indictment, it is conceded by both sides that if the statutes which the court below construed be given the meaning which the United States by the assignments of error assert is the correct one, an offense against the United States was stated in both counts of the indictment. The construction of the statutes, therefore, is the real question for decision. We propose to examine the statutes applicable to each count separately, and in doing so to weigh the conflicting contentions urged in argument bearing on the question of the true construction. We reserve, however, for final consideration various contentions relating merely to the construction of the indictment as a pleading, by which the United States contends that the court below was wrong, even, if for the sake of argument, it be assumed that its construction of the statutes was right and by which the defendants in error contend that the order quashing the indictment was right, even if the court was

wrong in its view of the law, because of defects in the indictment.

1. *The first count.*

This count requires us to consider only the conspiracy provision, § 5440, and the coal land provisions, §§ 2347, 2348, 2349 and 2350. As the applicability of § 5440 to the facts charged largely depends upon whether those acts were forbidden by the sections last mentioned, we proceed first to their consideration. Under these sections the question is, Do they prohibit a person who is disqualified from acquiring additional coal lands from the United States, because he has already purchased the full quantity permitted by law, from employing one, who would be qualified if he made any entry of coal land, in his own behalf, to make such entry ostensibly for himself but really as agent for the disqualified principal to pay for the land with money of such principal under the obligation, when the title has been obtained by purchasing from the United States, to turn over the land purchased to the concealed and disqualified principal? That the statute does expressly prohibit such a transaction we think is foreclosed by a previous decision of this court. Before coming to so demonstrate, however, in view of the contrary conclusion reached by the court below and the earnestness with which the correctness of that conclusion has been pressed at bar, we shall briefly consider the subject upon the hypothesis that it is open and not foreclosed. Beyond question, by § 2347, Rev. Stat., everyone possessing the qualifications of age and citizenship therein stipulated is entitled, upon application and on payment of the price fixed by law, to purchase in his own behalf one hundred and sixty acres of coal land, and every association of persons possessing the qualifications therein mentioned is entitled to purchase three hundred and twenty acres of such land. This right, however, to thus purchase is not uncontrolled, since it is limited by the § 2350, saying:

"The three preceding sections shall be held to authorize only one entry by the same person or association of persons;

and no association of persons, any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions. . . ."

The express command that the preceding sections shall be held to authorize only one entry by the same person or association of persons causes the grant to purchase not to embrace more than one entry by the same person, and as the right to purchase the coal land did not exist except by the authority conferred by the statute, it follows that the express provision excluding the right to do a particular act is both, in form and substance, a prohibition against the doing of such act. To hold that this prohibition does not exclude the existence in a disqualified person of a power to employ an agent to make a second entry, to furnish him with the money to pay for the land, under an obligation when he has bought from the United States to transfer the land to the disqualified person, would require us to say that the power was given to do that which the statute, in express terms, declares shall not be done. In other words, it would compel us to decide that an act done for a disqualified person by an agent acting for him and for his exclusive benefit was not the act of the disqualified principal. But this would be to nullify the prohibition upon the inconceivable hypothesis that the act of a duly authorized agent was not the act of his principal. To escape this impossible result it is insisted in argument that where a person qualified to purchase buys in his own name, without disclosing that he is a mere agent for a disqualified person, as he, the agent, thereby exhausts his individual right, the purchase must be treated as his and not that of the undisclosed principal. This, however, does not change the situation, but simply seeks to avoid it by the statement of a distinction without a difference, since it again but reads the prohibition out of the statute by

causing it to be inoperative if the disqualified person elects to do by another, his agent, that which the statute forbids him to do. True, the statute imposes no limitation on the right of a purchaser who has acquired coal land from the United States to sell the same after he has become the owner of the land. The absence, however, of a limitation on the power to sell after acquisition affords no ground for saying that the express prohibition of the statute against more than one entry by the same person should not be enforced according to its plain meaning. This clearly follows, since the right to sell that which one has lawfully acquired neither directly nor indirectly implies the authority to unlawfully acquire in violation of an express prohibition.

It is elaborately argued that the laws as to the sale of coal lands were originally embraced in the general statutes regulating the disposition of mineral lands, in which there were no limitations whatever as to the number of entries that a single entryman might make. With this genesis in mind it is urged that the sole purpose of the prohibition forbidding more than one entry by the same person, inserted in the coal land laws when that subject came to be separately dealt with, was to secure to every citizen the right if he chose to make one entry; in other words, to prevent the monopolization by one person by means of many entries of the whole or a vast part of the coal fields belonging to the United States. From this it is insisted the prohibition forbidding more than one entry by the same person should not be held to embrace an entry made by a qualified person for the benefit and as the agent of a disqualified one when the qualified person did not disclose the fact that he was acting as an agent. Conceding for the sake of argument the premise, we do not perceive its relevancy. That is to say, we do not comprehend how such concession lends support to the proposition that the prohibition against more than one entry by the same person should be disregarded by allowing more than one entry by the same person, if only that person chose, after making one entry in his own name,

to cause other and subsequent entries *ad libitum* to be made for his benefit by his agent with his money and for his exclusive account.

But if the mind could bring itself upon grounds of the supposed public policy of the statute to disregard the prohibition which it expressly contains, the argument here advanced, instead of conducing to that result, leads directly to the contrary. The purpose of the prohibition being, as the argument insists, to keep open the opportunity to every citizen to make one entry for himself, thus discouraging monopoly, it is obvious that that public purpose would be frustrated by allowing a person to make one entry in his own name and thereafter as many as he chose through his agents and for his exclusive benefit. It is a misconception to assume that there is any real identity between a purchase made by a qualified person in his own name and for himself with a purchase made by such person ostensibly for himself but really as the agent of a disqualified person. In the one case the person securing coal land from the United States for himself is free to dispose of the land after acquisition as he may deem best for his interest and for the development of the property acquired. In the other case the ostensible purchaser acquires with no dominion or control over the property, with no power to deal with it free from the control of the disqualified person for whose benefit the purchase was made.

And the legislation of Congress subsequent to the coal land laws indicates that Congress contemplated, in enacting the prohibition against more than one entry, the distinction between an entry made by one for himself, with the full power of disposition after entry, and an entry made by one ostensibly for himself but in reality for another. Thus, under the timber culture act of June 14, 1878, c. 190, 20 Stat. 113, which conferred authority upon citizens of the United States, or persons who had declared their intention to become such, to make one entry of not exceeding one quarter-section of land for the cultivation of timber, the statute was sedulous to require

that the person desiring to hold and cultivate the land should, at the time of making his entry, swear in his application that his filing and entry was made for his own exclusive use and benefit.

And the public policy lying at the foundation of the prohibition against an entry of land for the conceded benefit of another, whilst leaving full power of disposition in one who acquired the land in compliance with the statute, was pointed out in *United States* v. *Budd,* 144 U. S. 154, where, in considering the timber and stone act of June 3, 1878, c. 151, 20 Stat. 89, it was said (p. 163):

"The act does not in any respect limit the dominion which the purchaser has over the land after its purchase from the Government, or restrict in the slightest his power of alienation. All that it denounces is a prior agreement, the acting for another in the purchase. If when the title passed from the Government no one save the purchaser has any claim upon it, or any contract or agreement for it, the act is satisfied."

We shall not further pursue the analysis, as we think it is patent that the whole argument rests upon a plain disregard of the prohibition which the statute contains or seeks to render that prohibition nugatory by contradictory assumptions; that is to say, by assuming that things which are one and the same are wholly different, and on the other hand by asserting that things which are different are one and the same. This is said because such is the result of the contention that a purchase made by one through his agent is in legal effect a different thing from a purchase made by the principal, and on the other hand by the proposition that a purchase made by one for his own account is not different from a purchase made by the same person, not for his own account but for another.

But, as we have hitherto observed, the review of the contentions as an original question was not essential, because their want of merit affirmatively appears from a prior adjudication of this court. The case referred to is *United States* v. *Trinidad Coal Company,* 137 U. S. 160. The United States sued to

annul certain patents to coal lands on the ground that the land had been purchased by officers and employés of a corporation when the corporation itself was disqualified, because it had already made one entry. The court below had sustained a demurrer to the bill. Its decree was reversed and it was expressly decided that the entries made both by the officers of the corporation and its employés were void. The contention was urged that the employés, having each a right to make an entry for his own account, it was not unlawful to do so for the benefit of the corporation. This was expressly negatived, the court saying (p. 167):

"It is true, in the present case, that some of the persons who made the entries in question were not, strictly speaking, members of the corporation but only its employés. But as they were parties to the alleged scheme, and were, in fact, agents of the defendant in obtaining from the Government coal lands that could not rightfully have been entered in its own name, that circumstance is not controlling. . . . There is, consequently, in view of all the allegations of the bill, no escape from the conclusion that the lands in question were fraudulently obtained from the United States. We say fraudulently obtained, because, if the facts admitted by the demurrer had been set out in the papers filed in the Land Office, the patents sought to be cancelled could not have been issued without violating the statute. The defendant would not have been permitted to do indirectly that which it could not do directly."

Because the statute was thus construed in a civil cause affords no reason for saying that the authoritative construction of the statute is not to be applied in a criminal case. It is true that in the reasoning of the opinion the public policy upon which the prohibition of the statute was founded was pointed out, but this does not justify the contention that the decision was rested, not upon the prohibition, but upon public policy alone.

The contention that the rules and regulations of the General Land Office or decisions made thereunder have recognized

the right of a qualified person to enter coal lands in his own name, ostensibly for himself but really for a disqualified person, under the obligation to transfer the land after purchase to such person, we think finds no semblance of support either in the rules and regulations or in the decisions of the Department.

The meaning of the coal land statutes being thus fixed, the consideration of the conspiracy statute, § 5440, Rev. Stat., is free from difficulty. It will be observed that the section embraces two classes of conspiracies, the first "to commit any offense against the United States" and the other "to defraud the United States in any manner or for any purpose." The count we are now considering, it is not disputed, was framed upon the second clause. The proposition urged in argument that a charge of the commission of crime cannot constitutionally be predicated upon the averment of a conspiracy to defraud under the second clause, unless the acts charged were antecedently made criminal, is without merit and is foreclosed by *Hyde* v. *Shine,* 199 U. S. 62, wherein it was expressly held that a prosecution would lie upon the charge of a conspiracy to obtain by fraudulent practices public lands of the United States. And indeed the ruling in that case was but the reiteration of the prior rulings in *United States* v. *Hirsch,* 100 U. S. 33, and *Dealy* v. *United States,* 152 U. S. 539.

The contention that the word "defraud" must be confined to its common-law significance, and hence cannot embrace the acts here charged, is without merit, even if we concede for the sake of argument that the word has a common-law meaning, and that that meaning would be impelled if the word stood alone in the statute. This follows because the argument rests upon the assumption that the word "defraud" stands alone in the statute, and ignores the broader meaning which must result from the words "in any manner or for any purpose," by which the word "defraud" is accompanied in the statute. Besides, the contention is foreclosed by *United States* v. *Trinidad Coal Company,* where transactions of the very

nature of those here charged were declared to be a fraudulent obtaining of the lands of the United States, and indeed transactions generally of a like character formed the subject-matter of the ruling in *Hyde* v. *Shine.*

The unsoundness of the argument that as when the prohibited entries were made the price of the lands was paid to the United States, therefore the United States could not have been defrauded, is refuted by its mere statement. If it were true, then in every case, however flagrant, where the lands of the United States were procured in violation of express prohibitions of law, the element of fraud would cease to exist by the mere payment of the price; that is to say, the successful operation of the fraud would deprive the transaction of its fraudulent character. But the inherent weakness of the contention need not be further pointed out, because its want of merit is conclusively established by the ruling in *Hyde* v. *Shine,* where a like contention was decided to be without foundation.

The attempt to distinguish this case from *Hyde* v. *Shine,* upon the theory that there the parties obtaining the land were disqualified whilst in this they were not, rests upon the misconstruction of the coal land statutes which we have already pointed out, a misconstruction which we have seen led the court, in its ultimate conclusion, erroneously to say that the entrymen who acted as the agents of the disqualified persons or corporation were not forbidden by the statute to act as they did, because they might have made an entry for themselves.

Nor do we deem it necessary to do more than briefly refer to the elaborate statements at bar concerning constructive crimes and the fear which also found expression in the opinion below, that if the words to defraud in any manner or for any purpose receive a broad significance charges of crime may be hereafter predicated upon acts not prohibited and innocuous in and of themselves, and which, when they were committed, might have been deemed by no one to afford the basis of a criminal prosecution. It will be time enough to

consider such forebodings when a case arises indicating that the dread is real and not imaginary. That they are mere phantoms when applied to the case here presented results from the obvious consideration that the conspiracy charged had for its purpose the doing of acts which were in clear violation of the direct prohibition of the coal land laws, a prohibition whose meaning and effect had been unmistakably announced and applied by a decision of this court rendered many years before the formation of the conspiracy here charged. The cogency of these considerations becomes more pointedly manifest when it is borne in mind that the purpose and necessary effect of the conspiracy complained of was to obtain the lands of the United States by the suppression of facts which, had they been disclosed, would have rendered the acquisition impossible.

2. *The second count.*

The court below considered that the second count was framed solely upon the first clause of § 5440; that is, it held that the count charged the formation of a conspiracy to commit an offense against the United States through a violation of § 4746, and because of the construction given to that section it was decided that the count stated no offense. In testing the count in this aspect we must primarily fix the meaning of § 4746, as violations of that section were charged to have been the subject of the alleged conspiracy.

It was conceded by the United States in argument, and indeed it could not have been in reason denied, that the section in question, as originally embodied under the head of pensions in the Revised Statutes, related exclusively to pension or bounty land claims. No crime, therefore, could have been predicated under the original section upon the affidavits or other papers used in making the coal land entries as alleged in the indictment. The contention, therefore, as now made by the United States, to sustain the second count, rests upon the proposition that the amendment to § 4746 by the act of July 7, 1898, had the effect of bringing within that section sub-

jects to which, prior to the amendment, the section in no
manner related. Turning to the text, which we have previ-
ously quoted, with the provisions incorporated by the amend-
ing act, printed therein in italics, it will be observed that
every enumeration or description of new acts or papers in
addition to those embraced in the section prior to the amend-
ment, alone concern pension or bounty land claims. The
argument as to the broad scope of the statute in its present
form rests therefore alone upon the proposition that because
the amendatory statute in repeating the original words, viz.,
"concerning any claim for pension or payment thereof, or
pertaining to any other matter within the jurisdiction of the
Commissioner of Pensions," adds to them the following, viz.,
"or of the Secretary of the Interior," therefore the statute
now embraces not only acts done in connection with pension
or bounty land claims, but all acts of the prohibited character
as to any matter coming before the Secretary of the Interior,
or subject to so come, entirely without reference to whether
they were in pension or bounty land claims or proceedings.
But to adopt this latitudinarian construction would cause the
statute to create a multitude of new and substantive crimes,
wholly disconnected with claims for pensions or bounty land,
with which latter it was alone evidently the purpose of the
original as well as the amendatory statute to deal. We think
to state the proposition is in effect to answer it. When the
original text and the amendments which were made are taken
into view, the conclusion inevitably follows that the purpose
of the amendment was but to more specifically define the
pension or bounty land papers, etc., with which the statute
was concerned, and to enlarge the operation of the statute
in respect to such papers so as to cause it to be criminal to
use the pension or bounty land papers, etc., to which the
statute refers, as well before the Secretary of the Interior as
before the Commissioner of Pensions. In other words, that
the only purpose of the amendment was to more fully deal
with the subjects with which the provision which was amended

dealt, and not by way of the amendment to legislate concerning every conceivable subject coming within the jurisdiction of the Secretary of the Interior. To otherwise hold would not only violate the most elementary rules of construction, but would require the treating as superfluous the new words of enumeration concerning pension matters which the amendatory act expressed. This follows, because if the adding by way of amendment of the words "or of the Secretary of the Interior" contemplated bringing within the criminal inhibitions of the statute every act of a like nature to those forbidden done in connection with every subject within the jurisdiction of the Secretary of the Interior, then the new enumerations made in the amendment were wholly unnecessary, because without enumeration they would have been embraced in the statute as amended. Indeed, if the purpose intended to be accomplished by the amendment had been to embrace all acts of the prohibited nature as to every subject within the jurisdiction of the Secretary of the Interior, no reason can be suggested why the new legislation should have taken the form of a mere amendment to the section of the statutes which was alone concerned with pension and bounty land claims. Construing the statute as relating only to the subject of pension and bounty land claims coming within the authority of the Commissioner of Pensions or the Secretary of the Interior, it follows that a violation of its provisions could not arise from the acts charged in the indictment concerning the coal land entries.

Finally we come to the two contentions of the Government which we have hitherto temporarily put aside, and to the various contentions on the part of the defendants in error, insisting either that the court below misconstrued the indictment, or that there were such defects in the indictment that it was rightly quashed, irrespective of the construction of the statutes which led the court below to do so. But we do not think we have jurisdiction on this writ of error to consider these questions. The right of the United States to come di-

rectly to this court because of the construction of the statutes by the court below, as we have previously said in considering the question of jurisdiction, is solely derived from the act of 1907, the text of which is printed in the margin.[1] That act, we think, plainly shows that in giving to the United States the right to invoke the authority of this court by direct writ of error in the cases for which it provides contemplates vesting this court with jurisdiction only to review the particular question decided by the court below for which the statute provides. In other words, that the purpose of the statute was to give the United States the right to seek a review of decisions of the lower court concerning the subjects embraced within the clauses of the statute, and not to open here the whole case.

---

[1] CHAP. 2564.—An Act Providing for writs of error in certain instances in criminal cases.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That a writ of error may be taken by and on behalf of the United States from the District or Circuit Courts direct to the Supreme Court of the United States in all criminal cases, in the following instances, to wit:

"From a decision or judgment quashing, setting aside, or sustaining a demurrer to, any indictment, or any count thereof, where such decision or judgment is based upon the invalidity, or construction of the statute upon which the indictment is founded.

"From a decision arresting a judgment of conviction for insufficiency of the indictment, where such decision is based upon the invalidity or construction of the statute upon which the indictment is founded.

"From the decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy.

"The writ of error in all such cases shall be taken within thirty days after the decision or judgment has been rendered and shall be diligently prosecuted and shall have precedence over all other cases.

"Pending the prosecution and determination of the writ of error in the foregoing instances, the defendant shall be admitted to bail on his own recognizance: *Provided,* That no writ of error shall be taken by or allowed the United States in any case where there has been a verdict in favor of the defendant.

"Approved, March 2, 1907." (34 Stat. 1246.)

We think this conclusion arises not only because the giving of the exceptional right to review in favor of the United States is limited by the very terms of the statute to authority to re-examine the particular decisions which the statute embraces, but also because of the whole context, which clearly indicates that the purpose was to confine the right given to a review of the decisions enumerated in the statute, leaving all other questions to be controlled by the general mode of procedure governing the same. It follows from what we have said that the court erred in its construction of the statutes by which it quashed the first count of the indictment, and that from a rightful construction of the statutes no error was committed in quashing the second count. The order, therefore, quashing the first count is reversed and that quashing the second count is affirmed, and the case is

> *Reversed and remanded for further proceedings in conformity to this opinion.*