TERRITORY OF HAWAII *v.* LLEWELLYN H. L. HART, YEE BUNG AND TOM QUAY.

No. 2407.

ARGUED AUGUST 8, 1939.                    DECIDED AUGUST 28, 1939.

COKE, C. J., PETERS AND KEMP, JJ.

OPINION OF THE COURT BY KEMP, J.

Ordinance 702, as amended by ordinance 709 of the City and County of Honolulu, requires all department heads to call for informal bids from not less than three business establishments, provided there are that many who sell or offer for sale the type of merchandise wanted, on all purchases of goods, wares, merchandise, etc., ranging from $100 to $1000. Section 5720, R. L. 1935, defining the crime of conspiracy, is in part as follows: "A conspiracy is a malicious or fraudulent combination or mutual undertaking or concerting together of two or more * * * to do * * * what is obviously and directly wrongfully injurious to another."

An information filed by the public prosecutor of the City and County of Honolulu in the circuit court of the first judicial circuit in three counts, all of which are substantially the same, sets out in full the ordinance aforesaid and alleges that there were at least three persons offering for sale and selling the kind of tires mentioned in the information; that the defendants Llewellyn H. L. Hart, superintendent of the division of street cleaning and garbage of the department of public works of the City and County of Honolulu, Yee Bung and Tom Quay did maliciously and fraudulently combine, mutually undertake

and concert together to obviously and directly wrongfully injure and cheat the said City and County of Honolulu and, by craft, fraud and trickery, interfere with and obstruct the governmental function of the City and County of Honolulu of making purchases by the use of competitive bidding for merchandise purchased by and for the said division of street cleaning and garbage of the City and County of Honolulu and by the said prevention of competitive bidding deprive the said city and county of the advantage and right of securing competitive prices on the purchase of merchandise by the said City and County of Honolulu. The details of the plan by which the purpose of the defendants was to be consummated are set out in the information and may be summarized as follows: The defendant Hart was to issue a city and county purchase order for certain tires and tubes to the amount of $153.50 to the New Oahu Carriage Manufacturing Company, a nonexistent business establishment used as a dummy and fictitious business establishment by the other two defendants for the sole and express purpose of selling tires to the said City and County of Honolulu in pursuance of their mutual undertaking, combination and concerting together aforesaid; that said order would be issued to the defendant Yee Bung as a representative of said nonexistent business establishment, before and without any call being made for informal bids by anyone, as in the said ordinance provided; that the defendants Yee Bung and Tom Quay would purchase the tires to be sold to the city and county from the distributor and deliver them to the said city and county and thereafter bill them to the city and county in the name of said nonexistent business establishment, the New Oahu Carriage Manufacturing Company; that payment would be made by warrant of the City and County of Honolulu payable to said nonexistent business establishment; that the defendant Tom

Quay would endorse and cash said warrant and make a percentage division of the profit with the defendant Yee Bung.

Said information then sets forth in detail one purchase of two tires and tubes in strict conformity with the combination, mutual undertaking and concerting together, in which each of the three defendants are alleged to have performed his part of the undertaking and concludes with an allegation that the said three defendants in manner and form aforesaid did commit the crime of conspiracy in the third degree, contrary to the form of the statute in such cases made and provided.

The defendants Hart and Yee Bung demurred to the information on the following grounds: That the information fails to state facts sufficient to charge conspiracy, in that: 1. It affirmatively appears that the object of the alleged conspiracy was legal and fails to set forth facts showing the means by which the object was to be accomplished were illegal; 2. it affirmatively appears that the defendants Yee Bung and Tom Quay were incapable of violating the ordinance in question and that, therefore, there could be no conspiracy between them and the defendant Hart; 3. that the information fails to allege any fact showing that the alleged agreement was entered into with an evil or corrupt purpose; 4. that it fails to set forth facts showing that the means by which the alleged conspiracy was to be accomplished were illegal, deceitful or dishonest; 5. that it affirmatively appears that the offense, if a conspiracy is shown, is trivial.

The defendant Tom Quay also demurred to the information. His demurrer contains the following additional grounds: 1. That it does not appear that the city and county was deprived of anything of value with respect to the purchase and sale of the two tires referred to or that the purchase and sale were not made with the

full consent and acquiescence of the city and county; 2. that the ordinance referred to is not a penal ordinance but is in the nature of a directory rule for the guidance of department heads in making purchases; 3. that it is not alleged that Tom Quay knew of the existence of said ordinance or that he was the seller in a transaction in which the provisions of said ordinance were not observed by the defendant Hart; 4. that it does not appear that ordinance 709 was in force and effect at the time said purported and claimed conspiracy originated.

The circuit judge sustained the demurrers and dismissed the information. The Territory has sued out a writ of error to review the decision of the circuit judge sustaining the demurrers. The circuit judge, in sustaining the demurrers, as shown by the report of his oral decision, proceeded upon the theory that to charge a conspiracy to do what is obviously and directly wrongfully injurious to the City and County of Honolulu it must appear from the allegations that the city and county would suffer a financial loss if the object of the combination is consummated or that unlawful means were used to consummate the agreed plan. After correctly setting forth the applicable portion of section 5720, R. L. 1935, which the pleader intended to charge the defendants with having violated, the circuit judge said: "And there are no facts alleged in this information which, as a matter of law, could be construed to set up that there is an obvious and direct wrong to the City and County of Honolulu, by reason of the entire absence of allegation that the course of conduct alleged to have been agreed upon was calculated or did actually in the pursuit of business deprive the City and County of twenty-five cents worth or twenty-five mills worth of materials, that the materials were inferior, that any unlawful means were used to obtain the cooperation of Mr. Hart and the City and County."

Other portions of the oral decision indicate that the circuit judge did not hold that the information need state in so many words that the city and county suffered or would suffer a financial loss as a result of the conduct of the defendants but that it was necessary to allege facts to show not only that there were three or more dealers in such tires but that some one or more of them would be willing and able to sell the tires to be purchased for a lower price. In other words, that it was necessary for the pleader to allege facts showing that if bids had been called for some one of the three or more dealers would have bid less than the price agreed upon by the defendants in the manner alleged, thus showing a pecuniary loss. This theory runs throughout the oral decision.

We deem it sufficient, without setting forth the assignments of error relied upon, to state that they sufficiently challenge the correctness of the ruling of the circuit judge in the particulars herein discussed.

Our statute defining a conspiracy and making it a crime for two or more to maliciously or fraudulently combine or mutually undertake or concert together to do "what is obviously and directly wrongfully injurious to another," is materially different from any other statute defining a conspiracy that has come to our attention. It should also be noted that section 5722, R. L. 1935, further dealing with the crime of conspiracy, provides that "It is not requisite that the act agreed upon should be done or attempted in pursuance of the conspiracy; the conspiracy itself constitutes the offense." This statute makes it unnecessary to allege or prove an overt act as required by most, if not all, other conspiracy statutes.

The nearest approach to our statute defining a conspiracy coming to our attention is our federal statute on the subject which reads: "If two or more persons conspire either to commit any offense against the United States,

or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined," etc. U.S.C.A., tit. 18, p. 125. It is well-established that under that statute it is not essential to charge or prove a financial or property loss to make out a case of conspiracy to defraud the United States; that it is sufficient in that regard if it is made to appear that the purpose of the conspiracy was to impair, obstruct or defeat the lawful function of any department of the government regardless of whether or not the government would thereby suffer a financial loss. (*Haas* v. *Henkel,* 216 U. S. 462; *Hammerschmidt* v. *U. S.,* 265 U. S. 182.)

In *Haas* v. *Henkel, supra,* Haas and others were indicted in the District of Columbia on a charge of conspiracy to defraud the United States. One of the defendants was Holmes, an employee of the department of agriculture, whose duty it was under a department regulation to keep secret cotton reports until officially published. There was no statute requiring secrecy. The indictment alleged that Haas and another conspired with Holmes to have Holmes give them advance information of the contents of the reports to be published for use in cotton speculation. Haas was arrested in New York and ordered removed to the District of Columbia. Haas sued out a writ of *habeas corpus.* One of his contentions necessary to be passed upon was that the indictment did not charge any offense against the laws of the United States. The supreme court in answer to this contention said: "These counts do not expressly charge that the conspiracy included any direct pecuniary loss to the United States, but as it is averred that the acquiring of the information and its intelligent computation, with deductions, comparisons and explanations involved great expense, it is clear that

practices of this kind would deprive these reports of most of their value to the public and degrade the department in general estimation, and that there would be a real financial loss. But it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government. Assuming, as we have, for it has not been challenged, that this statistical side of the Department of Agriculture is the exercise of a function within the purview of the Constitution, it must follow that any conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation. That it is not essential to charge or prove an actual financial or property loss to make a case under the statute has been more than once ruled. *Hyde* v. *Shine*, 199 U. S. 62, 81; *United States* v. *Keitel*, 211 U. S. 370, 394; *Curley* v. *United States*, 130 Fed. Rep. 1; *McGregor* v. *United States*, 134 Fed. Rep. 195."

In *Hammerschmidt* v. *U. S., supra,* Chief Justice Taft, speaking for the court, explained *Haas* v. *Henkel, supra,* as follows: "It is obvious that the writer of the opinion and the Court were not considering whether deceit or trickery was essential to satisfy the defrauding required under the statute. The facts in the case were such that that question was not presented. * * * To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means

that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention."

While, as we have said, the federal statute defining a conspiracy to defraud the United States is more nearly like our statute defining a conspiracy to do what is obviously and directly wrongfully injurious to another than any other statute coming to our attention, more is required to make out a case under that statute than is required under the Hawaii statute. As said by the Supreme Court of the United States in the *Hammerschmidt* case, the primary meaning of "to defraud" is to cheat one out of property or money. Having so held, it was necessary to resort to its secondary meaning to bring within the scope of the statute a conspiracy having for its object the defeating or obstructing of a lawful governmental function. Inherent in either the primary or secondary meaning of the term "to defraud" is deceit, craft or trickery or means that are dishonest. To maliciously conspire to do what is "obviously and directly wrongfully injurious to another," it is not necessary that the conspirators agree to resort to either deceit, craft, trickery or dishonesty. If two or more persons maliciously or fraudulently conspire or agree to do what would obviously and directly wrongfully subject the City and County of Honolulu either to pecuniary loss or deprive it of or obstruct it in its right to have its lawful business conducted in the manner prescribed by its ordinance, then it cannot be said that the conspiracy did not have for its object the doing of what is obviously and directly wrongfully injurious to the City and County of Honolulu. The information alleges that the defendants did the alleged acts maliciously. The

conspirators need not act both maliciously and fraudulently. Allegation and proof of either are sufficient. Malice is a state of mind and cannot be alleged in any other manner than that adopted by the pleader in this case, that is, by alleging that the defendants maliciously agreed to do certain things obviously and directly wrongfully injurious to the City and County of Honolulu. Conduct which defeats or obstructs the carrying out of a lawful function of the city and county government cannot fail to be injurious to that government even though pecuniary loss does not result and an agreement between two or more to do acts designed and calculated to accomplish that end comes squarely within the statutory definition of a conspiracy of the character here under consideration.

The order sustaining the demurrers is reversed and the cause remanded for further proceedings.

*K. E. Young*, Assistant Public Prosecutor (*C. E. Cassidy*, Public Prosecutor, with him on the briefs), for the Territory.

*C. B. Dwight* and *Hoon Wo Wong* (also on the briefs) for defendants in error Llewellyn H. L. Hart and Yee Bung.

*E. J. Botts* (also on the brief) for defendant in error Tom Quay.