### UNITED STATES v. DOUGHTEN et al.

(Circuit Court, E. D. Washington, E. D.   April 15, 1911.)

#### No. 1,519.

1. CONSPIRACY (§ 33*)—FRAUD AGAINST UNITED STATES—COAL LAND ENTRIES —INDICTMENT.

Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), provides that if two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of them do any act to effect the object of the conspiracy, all shall be liable to a penalty, etc. *Held,* that an indictment charging a conspiracy by defendants to defraud the United States by obtaining title to upwards of 5,000 acres of coal lands in Alaska of the value of $2,000,000 by means of 39 false, fraudulent, and fictitious entries made by as many different persons, ostensibly for their own benefit, but in fact for the benefit of the defendants, whereby the defendants would be enabled to receive and enjoy the benefit of a greater number of coal entries and locations and a greater quantity of coal lands than was permissible under the law, charged a crime.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

2. MINES AND MINERALS (§ 35*)—COAL LANDS—ENTRY—STATUTES—APPLICATION.

Rev. St. § 2347 (U. S. Comp. St. 1901, p. 1440), authorizes citizens to enter vacant coal lands in amount not exceeding 160 acres to any one person and 320 acres by an association of persons. Section 2349 provides the method of entry, and section 2350 (page 1441) declares that the three preceding sections shall authorize only one entry by the same person or association of persons, and that no association of persons, any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold

---

any other lands under the provisions thereof, etc. Act Cong. April 28, 1904, c. 1772, 33 Stat. 525 (U. S. Comp. St. Supp. 1909, p. 556), provides that any person or association qualified to enter coal lands of the United States who shall have opened or improved a coal mine or mines in any of the unsurveyed lands of the United States in the district of Alaska may locate the lands on which the mine or mines are situated in rectangular tracts containing 40, 80, or 160 acres by marking the corners with permanent monuments, etc., and then declares the mode for obtaining title, and provides (section 4) that "all the provisions of the coal land laws of the United States not in conflict with the provisions of the act shall continue and be in force in the district of Alaska." *Held*, that section 4 of the act of 1904 did not limit the continuation of the coal land laws of the United States made applicable to the district of Alaska to such laws as applied to surveyed lands only, but included the provisions of the Revised Statutes limiting the quantity subject to entry by individuals or associations, though the act of 1904 did not in itself limit the number of entries or locations a person or association might make.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 87: Dec. Dig. § 35.*]

Charles H. Doughten and others were indicted for conspiracy to defraud the United States in connection with certain coal land claims in Alaska. On demurrer to the indictment by defendant McKenzie. Overruled.

B. D. Townsend, Special Asst. Atty. Gen., Oscar Cain, U. S. Atty., and E. C. MacDonald, Asst. U. S. Atty.

James E. Fenton, for defendants Doughten and Brown.

James E. Fenton and Frank H. Graves, for defendant White.

J. W. Roberts (E. C. Hughes, of counsel), for defendants Charles A. McKenzie and Donald A. McKenzie.

RUDKIN, District Judge. The act of March 3, 1873, relating to the entry and sale of coal lands, is embodied in sections 2347 to 2352, inclusive, of the Revised Statutes (U. S. Comp. St. 1901, pp. 1440–1441), which read as follows:

"Sec. 2347. Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall upon application to the register of the proper land office, have the right to enter, by legal subdivisions, any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road.

"Sec. 2348. Any person or association of persons severally qualified, as above provided, who have opened and improved, or shall hereafter open and improve, any coal mine or mines upon the public lands, and shall be in actual possession of the same, shall be entitled to a preference right of entry, under the preceding section, of the mines so opened and improved: Provided, that when any association of not less than four persons, severally qualified as above provided, shall have expended not less than five thousand dollars in working and improving any such mine or mines, such association may enter not exceeding six hundred and forty acres, including such mining improvements.

"Sec. 2349. All claims under the preceding section must be presented to the register of the proper land district within sixty days after the date of actual possession and the commencement of improvements on the land, by the filing of a declaratory statement therefor; but when the township plat is not on file at the date of such improvement, filing must be made within sixty days from the receipt of such plat at the district office; and where the improvements shall have been made prior to the expiration of three months from the third day of March, eighteen hundred and seventy-three, sixty days from the expiration of such three months shall be allowed for the filing of a declaratory statement, and no sale under the provisions of this section shall be allowed until the expiration of six months from the third day of March, eighteen hundred and seventy-three.

"Sec. 2350. The three preceding sections shall be held to authorize only one entry by the same person or association of persons; and no association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions; and all persons claiming under section twenty-three hundred and forty-eight shall be required to prove their respective rights and pay for the lands filed upon within one year from the time prescribed for filing their respective claims; and upon failure to file the proper notice, or to pay for the land within the required period the same shall be subject to entry by any other qualified applicant.

"Sec. 2351. In case of conflicting claims upon coal lands where the improvements shall be commenced, after the third day of March, eighteen hundred and seventy-three, priority of possession and improvement, followed by proper filing and continued good faith, shall determine the preference-right to purchase. And also where improvements have already been made prior to the third day of March, eighteen hundred and seventy-three, division of the land claimed may be made by legal subdivisions, to include, as near as may be, the valuable improvements of the respective parties. The Commissioner of the General Land Office is authorized to issue all needful rules and regulations for carrying into effect the provisions of this and the four preceding sections.

"Sec. 2352. Nothing in the five preceding sections shall be construed to destroy or impair any rights which may have attached prior to the third day of March, eighteen hundred and seventy-three; or to authorize the sale of lands valuable for mines of gold, silver, or copper."

The act of June 6, 1900 (31 Stat. 658 [U. S. Comp. St. 1901, p. 1441]), extended the provisions of the foregoing sections to the District of Alaska.

The act of April 28, 1904 (33 Stat. 525 [U. S. Comp. St. Supp. 1909, p. 556]), which by its title purports to amend the act of June 6, 1900, provides as follows:

"That any person or association of persons qualified to make entry under the coal land laws of the United States, who shall have opened or improved a coal mine or coal mines on any of the unsurveyed public lands of the United States in the district of Alaska, may locate the lands upon which such mine or mines are situated, in rectangular tracts containing forty, eighty, or one hundred and sixty acres, with north and south boundary lines run according to the true meridian, by marking the four corners thereof with permanent monuments, so that the boundaries thereof may be readily and easily traced. And all such locators shall, within one year from the passage of this act, or within one year from making such locations, file for record in the recording district, and with the register and receiver of the land district in which the lands are located or situated, a notice containing the name or names of the locator or locators, the date of the location, the description of the lands located, and a reference to such natural objects or permanent monuments as will readily identify the same.

"Sec. 2. That such locator or locators, or their assigns, who are citizens of the United States, shall receive a patent to the lands located by presenting, at any time within three years from the date of such notice, to the register and receiver of the land district in which the lands so located are situated an application therefor, accompanied by a certified copy of a plat of survey and field notes thereof, made by a United States deputy surveyor or a United States mineral surveyor duly approved by the surveyor general for the district of Alaska, and a payment of the sum of ten dollars per acre for the lands applied for; but no such application shall be allowed until after the applicant has caused a notice of the presentation thereof, embracing a description of the lands, to have been published in a newspaper in the district of Alaska published nearest the location of the premises for a period of sixty days, and shall have caused copies of such notice, together with a certified copy of the official plat of survey, to have been kept posted in a conspicuous place upon the land applied for and in the land office for the district in which the lands are located for a like period, and until after he shall have furnished proof of such publication and posting, and such other proof as is required by the coal land laws: Provided, that nothing herein contained shall be so construed as to authorize entries to be made or title to be acquired to the shore of any navigable waters within said district.

"Sec. 3. That during such period of posting and publication, or within six months thereafter, any person or association of persons having or asserting any adverse interest or claim to the tract of land or any part thereof sought to be purchased shall file in the land office where such application is pending under oath, an adverse claim, setting forth the nature and extent thereof, and such adverse claimant shall, within sixty days after the filing of such adverse claim, begin an action to quiet title in a court of competent jurisdiction within the district of Alaska, and thereafter no patent shall issue for such claim until the final adjudication of the rights of the parties, and such patent shall then be issued in conformity with the final decree of such court therein.

"Sec. 4. That all the provisions of the coal land laws of the United States not in conflict with the provisions of this act shall continue and be in full force in the district of Alaska."

The act of May 28, 1908 (35 Stat. 424 [U. S. Comp. St. Supp. 1909, p. 557]), contains these further provisions:

"That all persons, their heirs or assigns, who have in good faith personally or by an attorney in fact made locations of coal land in the territory of Alaska in their own interest, prior to November twelfth, nineteen hundred and six, or in accordance with circular of instructions issued by the Secretary of the Interior May sixteenth, nineteen hundred and seven, may consolidate their said claims or locations by including in a single claim, location, or purchase not to exceed two thousand five hundred and sixty acres of contiguous lands, not exceeding in length twice the width of the tract thus consolidated, and for this purpose such persons, their heirs, or assigns, may form associations or corporations who may perfect entry of and acquire title to such lands in accordance with the other provisions of law under which said locations were originally made: Provided, that no corporation shall be permitted to consolidate its claims under this act unless seventy-five per centum of its stock shall be held by persons qualified to enter coal lands in Alaska.

"Sec. 2. That the United States shall, at all times, have the preference right to purchase so much of the product of any mine or mines opened upon the lands sold under the provisions of this act as may be necessary for the use of the army and navy, and at such reasonable and remunerative price as may be fixed by the President; but the producers of any coal so purchased who may be dissatisfied with the price thus fixed shall have the right to prosecute suits against the United States in the Court of Claims for the recovery of any additional sum or sums they may claim as justly due upon such purchase.

"Sec. 3. That if any of the lands or deposits purchased under the provisions of this act shall be owned, leased, trusteed, possessed, or controlled

by any device permanently, temporarily, directly, indirectly, tacitly, or in any manner whatsoever so that they form part of, or in any way effect any combination, or are in any wise controlled by any combination in the form of an unlawful trust, or form the subject of any contract or conspiracy in restraint of trade in the mining or selling of coal, or of any holding of such lands by any individual, partnership, association, corporation, mortgage, stock ownership, or control, in excess of two thousand five hundred and sixty acres in the district of Alaska, the title thereto shall be forfeited to the United States by proceedings instituted by the Attorney General of the United States in the courts for that purpose.

"Sec. 4. That every patent issued under this act shall expressly recite the terms and conditions prescribed in sections two and three hereof."

The indictment in this case was returned under section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), which declares:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years."

On his arraignment the defendant Charles A. McKenzie interposed a demurrer to the indictment, and the questions raised by the demurrer are now presented for decision. Inasmuch as the demurrer goes to the substance of the charge and not to mere matters of form, it is deemed sufficient for our present purposes to state in general terms that the indictment charges a conspiracy on the part of the defendants to defraud the United States by obtaining title to upwards of 5,000 acres of coal land in the district of Alaska, of the value of upwards of $2,000,000, by means of 39 false, fraudulent, and fictitious entries, made by as many different persons, ostensibly for their own use and benefit, but in truth and in fact for the use and benefit of the defendants, whereby the defendants will be enabled to receive and enjoy the benefit of a greater number of coal entries and locations and a greater quantity of coal land than is permissible under the law. I understand counsel for the demurring defendant to concede that the indictment charges a crime, if the prohibitions and limitations contained in section 2350 of the Revised Statutes apply to coal entries made in the district of Alaska under the Act of April 28, 1904, but, if this concession be not made, the question is no longer an open one. United States v. Trinidad Coal Co., 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640; United States v. Keitel, 211 U. S. 370, 29 Sup. Ct. 123, 53 L. Ed. 230; United States v. Portland Coal & Coke Co. (C. C.) 173 Fed. 566.

The position of the defendants, as I gather it from the briefs and arguments of counsel, is this: They contend that the act of 1904 is complete within itself, and bears a close analogy to the mineral land act; that under its provisions there is no limit to the number of entries or locations a person may make, or to the number of assignments he may take; that the provision of section 4, continuing the nonconflicting provision of the coal land laws of the United States in full force in the district of Alaska, continues such laws in force as to surveyed lands only; in fine, that the act is a new departure in coal land legislation, and was enacted by Congress in recognition of the well-

known fact that the existing laws were not adapted to local conditions in that distant territory. This argument is engaging and plausible, but to my mind it is neither convincing nor controlling. The supposed analogy to the mineral land act is found, first, in the requirement of section 1 of the act that the lands shall be located in rectangular tracts, containing 40, 80, or 160 acres, with north and south boundary lines run according to the true meridian, by marking the four corners with permanent monuments, and that the location notice shall be filed for record in the recording district, as well as with the register and receiver of the district land office; second, in the provision of section 2 of the act recognizing assignments and prescribing the mode of making proof; and, third, in the provision of section 3 of the act prescribing the mode and place of trial of adverse claims. I find nothing in these several provisions to indicate a general change of policy on the part of the government. These coal claims are located on unsurveyed lands. They cannot be described by reference to the public surveys, and the only thing left is to tie the descriptions to permanent monuments on the ground. The local land offices in Alaska are inaccessible, and in this fact I find a sufficient explanation and justification for the requirement that the location notices shall be filed in the recording district, and adverse claims tried out in the civil courts, which are accessible to the people. The provision of section 2 in relation to assignments is but the legislative recognition of a right which the department had rightfully or wrongfully accorded to entrymen under the act of 1873 for a period of 30 years prior to the passage of the act of 1904. The argument that the act of 1873 is not adapted to local conditions in Alaska tends equally to show that it is not adapted to conditions in any other section of the country. It may be that the act tends to promote fraud and perjury, and that 40, 80, or 160 acres of coal land is of little or no value to the individual, but this argument should be addressed to Congress, and not to the courts. It is a matter of familiar history that at the time of the passage of the act of 1873 the great coal fields of the western part of the United States were as far removed from civilization and from transportation facilities as are the coal fields of Alaska to-day, yet the policy of the government to confer a right upon the individual and to prevent monopoly has never been departed from in the nearly 40 years that have elapsed since the date of its passage. Furthermore, questions of general governmental policy such as this must be determined by Congress, and not by the courts. The question here presented is one purely of statutory construction; and, however firmly a court might disbelieve in the past coal land policy of the government, it would usurp authority not conferred upon it, should it attempt to establish a policy in defiance of the will of Congress. That body, acting within its constitutional authority, is the final arbiter of the public policy of the nation, and while the courts, unaided by legislative declaration, and applying the principles of the common law, may uphold or condemn contracts in the light of what is conceived to be public policy, their determination as a rule for future conduct must yield to the legislative will when expressed in the mode prescribed by the fundamental law. Turning

now to the legislation in question, what was the legislative intent as evidenced by the act of 1904? The original act of 1873 did not by its own terms extend to the district of Alaska. In 1900 Congress extended its provisions to that district, and there is not a word or a line in the extending act to indicate any change of policy on the part of the government at that time. It was later discovered that the act was not adapted to conditions there, not because a person could not make a sufficient number of coal entries, nor because he could not take a sufficient number of assignments, but because he could not acquire title at all until the public surveys were extended. It is true that under section 2 of the act of 1873 a person might acquire a preference right of purchase on unsurveyed lands, but he could not acquire title until the public surveys were extended. The mere preference right was therefore a barren one, unless there was a reasonable expectation that the public surveys would be extended so that the locator could obtain title at some time in the near future. It was to remedy this defect, and not to enlarge the rights of the entryman, that the act of 1904 was passed. Its sole purpose in my opinion was to enable locators to acquire title to coal lands on unsurveyed public lands. There is nothing in the act inconsistent with this view, nor is there anything in the act, so far as I can discover, inconsistent or in conflict with the provisions of section 2350 of the Revised Statutes, prohibiting more than a single entry by a single individual. The conflicting provisions in the act of 1904 relate to the mode of location, the time and manner of making final proof, and the manner of trial of adverse claims, and I find no other conflict between the two acts. The fact that section 2350 of the Revised Statutes limits its operation to entries made under the three preceding sections is to my mind of no moment. The original act used the expression, "this act," instead of "the three preceding sections," and in its last analysis the provision meant only that no more than one coal land entry by a single individual was permissible. This conclusion is fortified by the act of 1908. This latter act, as clearly appears from its title and subject-matter, is an enabling statute, and was intended to extend and enlarge the rights of locators in Alaska. Yet, if we accept the views of the defendants such an enactment was wholly unnecessary, for locators possessed far greater rights under the act of 1904 than are accorded to them under the later enactment. While the act of 1908 was passed long after the commission of the acts charged in the indictment and cannot render criminal, acts which were innocent at the time of their commission, it may nevertheless be looked to for the purpose of ascertaining the legislative intent. The act of 1900, the act of 1904, and the act of 1908 are all in pari materia, and must be construed together. "All consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes in pari materia, are treated prospectively, and construed together, as though they constituted one act. This is true, whether the acts relating to the same subject are passed at different dates, separated by long or short intervals at the same session, or on the same day. They are all to be compared, harmonized, if possible, and, if not susceptible to

a construction which will make all of their provisions harmonious, they are made to operate together, so far as possible, consistently with the evident intent of the legislative enactment." Sutherland, Stat. Cons. 283. "Where there are earlier acts relating to the same subject, the survey must extend to them. They all are, for the purpose of construction, considered as forming one homogeneous and consistent body of law, and each of which may explain and elucidate every other part of the common system to which it applies." Endlich, Interpretation of Stat. § 43.

Thus, in United States v. Moore, 161 Fed. 513, 88 C. C. A. 455, the Circuit Court of Appeals for this circuit held that the Act of July 4, 1884, 23 Stat. 79, the Act of March 3, 1905, 33 Stat. 1064, and the Act of March 8, 1906, 34 Stat. 55, relating to certain Indian lands, were in pari materia, and the two later acts were examined and considered by the court in determining the validity of a conveyance made years before their passage. When these several coal land acts are construed together, I am convinced that Congress never intended that an association of individuals should be able to acquire title to vast areas of coal land in the district of Alaska or elsewhere by means and devices such as are set forth in this indictment.

It was urged in argument that criminal statutes must be strictly construed, and this rule is elementary, but it has no application to the coal land laws of Alaska. If the means employed by these defendants to acquire title to the coal lands in question are illegal and a fraud upon the United States, it must be so declared in every court in which the question arises, whether that court is exercising civil or criminal jurisdiction. On the trial of the action questions of criminal intent and other like questions peculiar to penal laws may arise, but they are not presented at this stage of the case, and do not appear on the face of the indictment. I reach this conclusion with some hesitation for two reasons: First, because able counsel who have argued the case on behalf of the defendants do not deem the question even a debatable one; and, second, because the Circuit Court of the United States for the Western District of Washington has reached a contrary conclusion on the same state of facts. Nevertheless I am so firmly convinced of the correctness of the conclusions here announced that my judgment will yield only to the mandate of some court of superior jurisdiction.

The demurrer is overruled.