# HYDE v. BISHOP IRON COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 126. Argued January 29, 30, 1900. — Decided April 9, 1900.

On the evidence set forth in the statement of facts and in the opinion of the court, it is *held,* that there was on the part of the entryman a distinct violation of section 2262 of the Revised Statutes, with regard to contracts by which the tract for which he applies is not to inure to another's benefit, and the adverse judgment of the court below is sustained.

On April 3, 1895, the Bishop Iron Company, one of the defendants in error, filed in the District Court of the Eleventh Judicial District of Minnesota, in and for the county of St. Louis, its complaint in ejectment, alleging that it was the absolute owner in fee simple and entitled to the immediate possession of the undivided $\frac{18}{25}$ of the following described land, situate in the county of St. Louis, to wit: The N.E. $\frac{1}{4}$ of the S.W.

$\frac{1}{4}$ of section 30, township 63 north, range 11 west of the fourth principal meridian, and that it was the lessee of the remaining undivided $\frac{12}{25}$ of said land under a lease in writing from and executed by the owners in fee simple of said remaining undivided $\frac{12}{25}$, by the terms of which lease plaintiff was entitled to the immediate, sole and exclusive possession of said undivided $\frac{12}{25}$; that the defendant, the present plaintiff in error, on January 1, 1895, wrongfully and unlawfully entered into and took possession of said tract, and had ever since kept possession thereof. The prayer of the complainant was for possession, for costs and disbursements. The defendant answered and filed a cross petition, and on his application certain parties were made defendants to that cross petition. He subsequently filed an amended answer and cross petition.

In the latter these facts are alleged : That ever since August 20, 1884, the petitioner has been in the actual, open and exclusive possession of the tract in controversy ; that at the time of his taking possession it was unoccupied and unsurveyed land of the United States ; that prior to July 20, 1885, the lands in that district were duly surveyed and an approved plat thereof filed in the land office at Duluth, Minnesota, that being the land office of the district in which those lands are situated ; that on July 20, 1885, he duly offered to the local land office and made application to file his declaratory statement for said tract and lots 5 and 6 and the S.E. $\frac{1}{4}$ of the N.W. $\frac{1}{4}$ of said section 30, and tendered the fees required by law to be paid on said application and filing ; that he was informed by the local land officers that they would reject such application unless limited to the tract in controversy ; that he then and there notified said local land officers that his house and the land he cultivated were upon and within said tract, and that he desired and intended to claim the same as a preëmption, whether or not he was successful in a contest which he had in reference to the other tracts in the application ; that he was told by them that if he was a settler in good faith his rights would be protected ; that on the same day, but without his knowledge, the register made this indorsement upon the application :

" Land Office, Duluth, Minn., July 20th, 1885. The within

application to file D.S. on the within described land is refused as to the S.E. ¼ of the N.W. ¼ and lots 5 and 6 of Sec. 30, T. 63, R. 11 W. for the reason that the date of settlement alleged herein does not antedate the unadjusted location of Sioux half breed scrip No. 19 E, in the name of Orille Moreau, filed for location June 16, 1883. Said unadjusted scrip location having withdrawn said land from settlement under the preëmption law subsequent to said date of filing of said scrip, to wit, June 16, 1883, you are allowed thirty days for appeal, and are advised that if you fail to do so within that time, this decision will be final."

That said officers retained said application, and also indorsed it as follows: "Filed Aug. 20, 1885;" that ignorant of this last indorsement, and within the proper time, after July 20, 1885, he formally appealed from the action of the local land office to the Commissioner of the General Land Office, which appeal was duly transmitted to that office on August 20, 1885; that thereafter, and on October 15, 1885, one Joseph H. Sharp, claiming to be the attorney in fact of James H. Warren, located the tract in controversy in the name of the said Warren, filing in support of said location certain Chippewa Indian scrip; that petitioner was ignorant of this location and filing until April 10, 1886, and then he made application in the local land office to contest said selection and location, and this application was also transmitted by the local land officers to the General Land Office at Washington.

The cross petition further alleged that on June 16, 1883, and before the surveys had been made of these lands, Orille Moreau, by her attorney in fact, located Sioux half breed scrip Nos. 19 D and 19 E on lands therein described by metes and bounds, which locations, after the surveys, were adjusted by the local land officers in the name of the locator, as follows: Scrip No. 19 D upon lots 3, 5 and 6 and the S.E. ¼ of the N.W. ¼ of said section 30, and No. 19 E upon lots 1 and 2 and the S.W. ¼ of the N.E. ¼ and the N.W. ¼ of the S.E. ¼ of said section 30; that on October 9, 1884, petitioner instituted a contest in the local land office against the said location of scrip No. 19 D, and on October 19, 1884, Angus McDonald a like contest against the

location of said scrip No. 19 E; that on the hearing of this latter contest the following testimony was received:

### "*Testimony of S. F. White.*

"S. F. White, being duly sworn upon oath, deposes and says: I am one of the attorneys for the contestant; I have made careful search through my safe and among all my papers for the contract of security given me by the contestants in these cases to secure me for advances and legal services and I am unable to find it. I supposed until about two or three days before the day set for hearing that it was in the files of the case in my office, but I have looked through that and could not find it and have made a careful search through my safe and among all my papers where I thought it could be, and have continued that search at various times up to this morning when I made a last final search through my safe and have been unable to find it, and have no idea where it is."

### "*Testimony of Mr. Hyde.*

"Q. Did you have any contract with Mr. White in writing or otherwise by which he was to receive any compensation or interest in the land?

"A. Yes, there was a contract.

"Q. Where is it?

"A. I don't know.

"Q. When and where did you see it last?

"A. I have not seen it since it was drawn by Mr. White.

"Q. What did it contain?

"A. It contained when I prove up on the land I was to secure him on a one half interest.

"Q. Who witnessed the contract?

"A. Powers, McDonald and myself and Mr. White were together; that is all I recollect. I can't say whether Powers witnessed it or not. The last I knew of the contract Mr. White had it. Mr. Powers was not included in the contract with McDonald and myself and White."

### "*Mr. McDonald's Testimony.*

"Mr. White has furnished me the supplies to keep me on the

claim. I am making the improvements for myself. I don't know of any one being interested in the claim except myself. Judge White has no interest in it. There is an understanding that he is to have an interest in it if we succeed in this trial. He is to have a half interest. I know R. D. Mallett; he has no interest in the claim, he is not going to have any.

"The arrangement with Hyde is the same as mine. White is to have half if we succeed in this. James H. Powers is also to have an interest in it if we succeed. I don't know how much he is to get. I agreed to give him an interest if we succeeded in getting the land. Mr. Hyde went after Powers to come and testify in the case. I never had any talk with Mallett about the claim. Mr. White is paying the expenses of the claim with the understanding that he is to have a half of it if we secure it."

Redirect :

"Q. The half interest you speak of Mr. White is to have was to be a deed of or security upon a half of the land for advances and services ?

"A. It was a security.

"Q. This interest you have spoken of as to Mr. Powers and which you say you cannot fix the amount of, what was that ? Was it not simply that he was to be paid for his time and services and there was no telling how much he would have to put in it ?

"He was to be paid for his time; that is all I mean by an interest he was to have."

Cross-examination :

"I am to let him have an interest in the land when I get it to pay him for his time and services. The contract I have with Mr. White for this one half is in writing.

"Q. When you get this land is it not the understanding between you and Mr. White that you are to deed him an undivided one half interest in it ?

"A. No, sir; we never mentioned a deed.

"Q. What do you mean then by saying that White was to have a half interest ?

"A. To secure him for advances.

" Q. Then if it was to secure him for advances made, how can you give him a half interest unless you deed him one half?

" A. I could not very well.

" Q. Then your understanding is you are to deed him one half interest in it?

" A. No; that is not my understanding.

" Q. Really you do not know anything about it, do you?

" A. I know my own transaction about it, but I don't know White's;"

that no further or other evidence was taken on either of said hearings relative to the said contract with the said White; and that by agreement this testimony offered in the McDonald case was to be considered in determining the validity of both locations, to wit, that of No. 19 D as well as that of No. 19 E. The cross petition then stated that such testimony was improperly admitted; that it was irrelevant, incompetent and immaterial because not bearing upon the question of the validity of these scrip locations; that the local land officers upon the termination of the hearing found the scrip locations valid, and both the petitioner and McDonald appealed therefrom to the Commissioner of the General Land Office; that the Commissioner reversed the decision of the local land officers and held the scrip locations invalid, and from his decision an appeal was taken by the locator to the Secretary of the Interior, who, on February 18, 1889, affirmed the decision of the Commissioner of the General Land Office, but erroneously and contrary to law held that said lands were open to entry by the first legal applicant. The cross petition then proceeded to show that for five succeeding years proceedings were continued in the land department at Washington and before the local land office at Duluth, in which repeated hearings and contests were had in reference to the validity of these scrip locations, and also of the location made by Warren of Chippewa scrip on the tract in controversy, the outcome of which was a final decision that Warren's application to enter this land with the Chippewa Indian scrip was valid and entitled to priority, and on the strength of that a patent was issued to him, and from him the plaintiff obtained its title.

Demurrers were interposed to the amended cross petition, which were sustained. On appeal to the Supreme Court of the State this ruling on the demurrers was on July 24, 1896, affirmed. 66 Minnesota, 24. Thereafter, in the district court, a reply was filed to the amended answer. The case came on for hearing on pleadings and proofs at the November term, 1896. Findings of fact and conclusions of law were made by the trial court and judgment entered for the plaintiff, which judgment was, thereafter, on April 22, 1898, affirmed by the Supreme Court, 72 Minnesota, 16, to reverse which judgment this writ of error was sued out.

*Mr. John Brennan* and *Mr. Louis A. Pradt* for plaintiff in error. *Mr. Arthur L. Sanborn* and *Mr. Louis K. Luse* were on their brief.

*Mr. James K. Redington* for defendants in error. *Mr. Frank B. Kellogg* and *Mr. J. H. Chandler* were on his brief.

Mr. Justice Brewer, after stating the facts, delivered the opinion of the court.

The testimony is not preserved in the record and no question can arise upon the findings of fact, for they are simply to the effect that the plaintiff had the legal title to an undivided $\frac{13}{25}$ and the leasehold right from the legal holders of the remaining $\frac{12}{25}$, and that the defendant was in possession without any color of title or right to the lands, so that the only questions which can be considered are those which arise upon the demurrers to the amended cross petition.

Upon the facts disclosed in that cross petition we remark that as the contest in reference to this tract was pending before the land department for nine years and carried on with exceeding vigor, as shown by the record of the frequent motions, applications and so forth on the part of the respective parties, it would seem impossible to believe that the department was not fully advised of the facts respecting the locations and entries. We are not called upon to determine

whether every step in this protracted controversy was carried on with technical accuracy in the matter of procedure, and it may be, as counsel contend, that upon some of the motions and in some of the contests testimony was received which was not pertinent to that particular phase of the controversy, but it is quite evident that in one form or another, on some motion or another, in some stage of the proceedings, all the facts and claims of either party were fully presented, considered and determined by the department. This is not a case on error, in which the regularity of every step taken in the land department is to be considered and determined and upon that inquiry judgment entered, affirming or reversing its decision, but it is an independent suit in the courts in which the inquiry is whether the parties to the proceedings in the land department had full and proper notice of those proceedings, whether the department heard the claims and evidence offered by each party, and then whether upon the facts as found by it there was any error in matter of law in its decision. It may be remarked in passing that there is no allegation of corruption or perjury, or any of the grounds upon which sometimes a court of equity will set aside the conclusion of another tribunal even where the proceedings are regular in form. And as it is evident from the showing made in the cross petition that both parties were often and fully heard and no limitation placed upon their right to offer testimony, we must accept as conclusive the findings of fact made by the department, and inquire simply whether the law was properly adjudged.

Coming now to the merits of the controversy, the defendant, the cross petitioner, made a single application to enter 160 acres, one quarter of which is the tract in controversy. There were not two separate applications, one to enter the 40 and another the remaining 120 acres, and it cannot now be treated as though there were two. If the applicant was guilty of any violation of law such violation vitiated the proceeding *in toto*. This is not like *Cornelius* v. *Kessel*, 128 U. S. 457, in which an entry of two tracts was sought, one of which was not at the disposal of the United States by reason of its being within a swamp land grant to the State, and it was held that the validity of the

entry as to the other was not affected thereby. In that case there was no wrong on the part of the entryman. He had acted in good faith, had not attempted any fraud, or to do anything in disregard of the mandates of the statutes, either in letter or spirit, and obviously the land department erred in cancelling the entire entry by reason of its covering land not subject to disposal. Here there was a distinct violation of law on the part of the entryman, and one which vitiated the application as a whole. The Revised Statutes, sec. 2262 require a preëmption applicant to make affidavit "that he has not directly or indirectly made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the Government of the United States should inure in whole or in part to the benefit of any person except himself," and also provide that "if any person taking such oath swears falsely in the premises, he shall forfeit the money which he may have paid for such land, and all right and title to the same." It was this statute which the land department found the applicant had violated, in that he was seeking to enter a portion of the land, not solely for his own benefit, but also in part for the benefit of others. It would be a gross perversion of the spirit of this statute to permit a party who has made a single application to enter a tract of land to ignore its unity after it has been proved that he has made a contract in defiance of the statute in reference to half the land, and have it divided into two separate and independent applications, and then his application sustained and his title confirmed as to that part of the land in respect to which he had made no contract. Such a construction would enable an applicant without any risk to speculate on the chances of escaping detection in his effort to violate the statute and thwart the purposes of Congress in the disposal of public lands.

No one can read the testimony which was offered before the land officers without perceiving that there was sufficient in it to justify a finding that the applicant had made a contract in direct violation of the statutory provisions. It is true he himself testified that he was to secure Mr. White "on a one half interest," but the contract itself was not produced, having in some way disappeared, and McDonald, who was a party to it

(for it was a joint contract between White, the applicant, and McDonald,) testified that Mr. White, paying expenses, did so under an agreement that he was to have half of the land. We do not stop to inquire whether an agreement to give a mortgage for money advanced comes within the letter or spirit of the statute, for there was enough in the testimony to justify the conclusion of the department that it was a contract to divide the land when obtained, and it is not the province of the courts to review such finding of fact.

These are the only questions which we deem of importance, and finding no error in the record the judgment of the Supreme Court of Minnesota is

*Affirmed.*