# UNITED STATES *v.* MUNDAY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF WASHINGTON.

No. 593.   Argued October 25, 1911.—Decided December 4, 1911.

Section 2350, Rev. Stat., is, by §§ 1 and 4 of the act of April 28, 1904, 33 Stat. 552, c. 1772, continued in force in the District of Alaska, and prohibits more than one entry of coal land by or for the same person or association of persons.

The policy adopted by Congress of restricting one coal land entry to each qualified entryman was to prevent monopolization of coal lands by securing to every citizen the right to obtain for himself one tract of not exceeding one hundred and sixty acres.

The rule of construction that an intention to depart from a long enforced uniform policy will not be imputed to Congress, applied in construing the act of April 28, 1904, 33 Stat. 552, c. 1772, relative to coal lands in Alaska.

A policy to confine the entryman to one entry is not affected by the fact that Congress leaves him free to assign a location made in good faith. *United States* v. *Keitel,* 211 U. S. 370.

All the statutes affecting coal land entries—act of March 3, 1873,

17 Stat. 607, c. 279, now §§ 2347–2349, Rev. Stat.; act of June 6, 1900, 31 Stat. 658, c. 996, and act of April 28, 1904, 33 Stat. 525, c. 1772—are in *pari materia* and must be read together, and no part of the earlier·acts is to be regarded as inoperative unless no other construction of the later legislation is reasonable.

The single object of the act of 1904 in regard to coal lands in Alaska was to provide for the sale of unsurveyed coal·lands, and it becomes inoperative as soon as the lands are surveyed.

THE facts, which involve the construction of statutes relating to location of coal lands in Alaska, are stated in the opinion.

*The Solicitor General* for the United States.

*Mr. E. C. Hughes,* with whom *Mr. Wilmon Tucker* was on the brief, for defendant in error, Munday.

*Mr. Charles W. Dorr* and *Mr. E. C. Hughes,* with whom *Mr. Hiram E. Hadley* was on the brief, for defendant in error, Shiels.

MR. JUSTICE LURTON delivered the opinion of the court.

This writ of error is prosecuted by the United States from a judgment sustaining a motion to quash an indictment.

The indictment is founded upon § 5440, Revised Statutes, and charges a conspiracy to defraud the United States by illegally obtaining title to forty contiguous tracts of coal lands in the District of Alaska, aggregating six thousand and eighty-seven acres, collectively known as the Stracey group, and averred to be of the value of ten million dollars.

The indictment is too long to be set out, even in an abbreviated form. The gravamen of the conspiracy charged is that the defendants induced or procured divers qualified persons to take the several steps required by law

to make locations of Alaska coal lands, not for themselves, but as the mere agents or representatives of the defendants for the purpose of securing to two named corporations a larger area of coal land than such corporations could lawfully locate for themselves.

For the defendants in error it has been very ably urged that since the concededly applicable coal land law gives to every individual, who is of age and a citizen of the United States, the right to make a coal land location for himself, and to assign his location when made, that there can be no fraud if he makes such location in the first instance for the benefit of another competent to buy the location when made. But if the provisions of the general coal land entry law found in § 2350, Revised Statutes, apply to the entry of coal lands in Alaska, the contention is now no longer an open one under the repeated interpretations of that section found in the cases of *United States* v. *Trinidad Coal Co.*, 137 U. S. 160; *United States* v. *Keitel*, 211 U. S. 370, and *United States* v. *Forrester*, 211 U. S. 399.

The corporations by whose procurement the forty locations by forty different persons were made, under the express terms of the statute referred to, were disqualified from making more than one location each, and being thus disqualified could not make a second location through an agent acting for their use and benefit. Any construction which would permit one prohibited by express command of the law from making more than one entry or location to make other entries or locations through the agency of a third person, qualified to make an entry for himself, would be to sanction a device which would nullify the purpose of the restriction.

The result must turn upon whether the restrictive features of § 2350, Revised Statutes, are applicable to the sale of coal lands in Alaska. The ruling of the court below and the contention made by the defendants in error is that the act of April 28, 1904, 33 Stat., p. 525, c. 1772, is the

only act applicable to the *unsurveyed* coal lands of Alaska. That act will be found set out in the margin.[1]

It purports to be an amendment of the act of June 6,

---

[1] That any person or association of persons qualified to make entry under the coal-land laws of the United States, who shall have opened or improved a coal mine or coal mines on any of the unsurveyed public lands of the United States in the district of Alaska, may locate the lands upon which such mine or mines are situated, in rectangular tracts containing forty, eighty, or one hundred and sixty acres, with north and south boundary lines run according to the true meridian, by marking the four corners thereof with permanent monuments, so that the boundaries thereof may be readily and easily traced. And all such locators shall, within one year from the passage of this Act, or within one year from making such location, file for record in the recording district, and with the register and receiver of the land district in which the lands are located or situated, a notice containing the name or names of the locator or locators, the date of the location, the description of the lands located, and a reference to such natural objects or permanent monuments as will readily identify the same.

Sec. 2. That such locator or locators, or their assigns, who are citizens of the United States, shall receive a patent to the lands located by presenting, at any time within three years from the date of such notice, to the register and receiver of the land district in which the lands so located are situated an application therefor, accompanied by a certified copy of a plat of survey and field notes thereof, made by a United States deputy surveyor or a United States mineral surveyor duly approved by the surveyor-general for the district of Alaska, and a payment of the sum of ten dollars per acre for the lands applied for; but no such application shall be allowed until after the applicant has caused a notice of the presentation thereof, embracing a description of the lands, to have been published in a newspaper in the district of Alaska published nearest the location of the premises for a period of sixty days, and shall have caused copies of such notice, together with a certified copy of the official plat or survey, to have been kept posted in a conspicuous place upon the land applied for and in the land office for the district in which the lands are located for a like period, and until after he shall have furnished proof of such publication and posting, and such other proof as is required by the coal-land laws: *Provided,* That nothing herein contained shall be so construed as to authorize entries to be made or title to be acquired to the shore of any navigable waters within said district.

1900, 31 Statutes at Large, p. 658, c. 796, which extended to Alaska "so much of the public land laws of the United States . . . as relate to coal lands, namely, §§ 2347 to 2352, inclusive, of the Revised Statutes." The sections of the general law thus extended to Alaska are set out in the margin.[1]

These sections came from the act of March 3, 1873, 17

---

Sec. 3. That during such period of posting and publication, or within six months thereafter, any person or association of persons having or asserting any adverse interest or claim to the tract of land or any part thereof sought to be purchased shall file in the land office where such application is pending, under oath, an adverse claim, setting forth the nature and extent thereof, and such adverse claimant shall, within sixty days after the filing of such adverse claim, begin an action to quiet title in a court of competent jurisdiction within the district of Alaska, and thereafter no patent shall issue for such claim until the final adjudication of the rights of the parties, and such patent shall then be issued in conformity with the final decree of such court therein.

Sec. 4. That all the provisions of the coal-land laws of the United States not in conflict with the provisions of this Act shall continue and be in full force in the district of Alaska.

[1] Sec. 2347. Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall, upon application to the register of the proper land-office, have the right to enter, by legal subdivisions, any quantity of vacant coal-lands of the United States not otherwise appropriated or reserved by competent authority, not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands, where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road.

Sec. 2348. Any person or association of persons severally qualified, as above provided, who have opened and improved, or shall hereafter open and improve, any coal mine or mines upon the public lands, and shall be in actual possession of the same, shall be entitled to a preference-right of entry, under the preceding section, of the mines so opened and improved; *Provided,* That when any association of not less than four

Statutes at Large, p. 607, c. 279. The only change made is in the substitution in § 2350 of the words, "The three preceding sections shall be held to authorize," etc., for the words of the fourth section of the original act, reading, "That this act shall be held to authorize,"—a change made necessary because the provisions of the original act are made a part of a chapter of the general land law embracing the sale of other public lands. The act of 1873, as thus carried into the Revised Statutes, did not permit an entry of coal lands which had not been surveyed. The

persons, severally qualified as above provided, shall have expended not less than five thousand dollars in working and improving any such mine or mines, such association may enter not exceeding six hundred and forty acres, including such mining improvements.

SEC. 2349. All claims under the preceding section must be presented to the register of the proper land-district within sixty days after the date of actual possession and the commencement of improvements on the land, by the filing of a declaratory statement therefor; but when the township plat is not on file at the date of such improvement, filing must be made within sixty days from the receipt of such plat at the district office; and where the improvements shall have been made prior to the expiration of three months from the third day of March, eighteen hundred and seventy-three, sixty days from the expiration of such three months shall be allowed for the filing of a declaratory statement, and no sale under the provisions of this section shall be allowed until the expiration of six months from the third day of March, eighteen hundred and seventy-three.

SEC. 2350. The three preceding sections shall be held to authorize only one entry by the same person or association of persons; and no association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions; and all persons claiming under section twenty-three hundred and forty-eight shall be required to prove their respective rights and pay for the lands filed upon within one year from the time prescribed for filing their respective claims; and upon failure to file the proper notice, or to pay for the land within the required period, the same shall be subject to entry by any other qualified applicant.

entry permitted was only "by legal subdivisions." The coal lands in Alaska were unsurveyed. Thus it happened that although the act of June 6, 1900, extended the provisions of the general law to Alaska, that law was for a time inoperative because the coal lands could not be entered "by legal subdivisions," when no such legal subdivisions existed. So obviously was this the case that a circular from the Department of the Interior was issued, instructing the registers and receivers in the district of Alaska that no coal filing nor entry could be filed in their offices until there should be filed with them "the official plat of survey of the township" in which entries were sought to be made. This was the situation which brought about the act of April 28, 1904, set out in the margin.

The contention is that although this act of 1904 expressly provides "that all of the provisions of the coal land laws of the United States not in conflict with the provisions of this act shall continue and be in full force in the district of Alaska," that the restrictions in the general coal land law authorizing "only one entry by the same person or association of persons," etc., is in conflict and therefore not operative to locations authorized by the later legislation.

Prior to the act of 1873, the disposition of coal lands was included in the general provisions regulating the sale of public lands, and under which there were no limitations upon the number of entries one person might make. But in 1873, when Congress sought to deal with the specific subject of the sale of coal lands, the rule was adopted of confining every qualified entryman to one entry, and every association of persons, not less than four in number and under certain conditions, to the entry of not exceeding six hundred and forty acres. A corporation has been held to be an association of persons within the meaning of this section. *United States v. Trinidad Coal Company,* 137 U. S. 160, 169. The policy of this restriction was to pre-

vent a monopolization of such coal lands by securing to every citizen the right to obtain for himself one tract, not exceeding one hundred and sixty acres, of such coal land. *United States* v. *Trinidad Coal Company*, cited above; *United States* v. *Keitel*, 211 U. S. 370.

That continued to be the uniform policy of Congress, and so continues, unless a departure has been made by the act of 1904. But, if so, it is only as to the unsurveyed coal lands of Alaska, for undoubtedly when such lands shall be surveyed, they will come at once under the restrictions of the general law as found in §§ 2347 to 2350, inclusive, of the Revised Statutes, since the act of 1904 applies only to the unsurveyed public lands of Alaska.

There occurs to us no reason for assuming that Congress intended to abandon the policy of keeping open the right of every citizen to enter one tract and no more of the unsurveyed coal lands of Alaska that would not lead also to the abandonment of the policy as respects coal lands which had been surveyed.

An intention to depart from a uniform policy, so long enforced in regard to coal lands, should not be imputed to Congress unless the act of 1904 admits of no other construction. *Morton* v. *Nebraska*, 21 Wallace, 660, 669.

But it is said that the purpose to depart from the policy which imposed a restriction upon the number of locations which had before been authorized is manifest in the provision of § 2 of the act in question, which requires that the locator or locators, *"or their assigns"* who are citizens of the United States, shall receive a patent to the lands so located, etc. The fact that one who has made a lawful location is permitted to make an assignment, as is the plain implication from the requirement that a patent "shall" issue to "the locator or his assigns," is not indicative of a purpose to abandon the prohibition upon more than one location. By going upon coal land, opening up a mine, permanently marking the boundaries, and filing

and making the notices required under the law one, otherwise qualified, initiates a claim to the land and may, by further compliance with the law, earn the right to a patent. That the policy of the law stops at this point and leaves him free to assign his location, does not impeach the intent of Congress to confine a locator to a single location. The prohibition is against more than one entry, not against alienation after a good-faith location.

Of the restrictions concerning the entry of land under the Timber and Stone Act, it was said: " The act does not in any respect limit the dominion which the purchaser has over the land after its purchase from the government, or restrict in the slightest his power of alienation. All that it denounces is a prior agreement, the acting for another in the purchase." *United States* v. *Budd*, 144 U. S. 154, 163.

The same argument was addressed to this court in *United States* v. *Keitel*, 211 U. S. 370, 389, as a reason for confining the prohibition to one entry made by a qualified person for the use and benefit of another who was disqualified from making a second entry. But this court said: "True, the statute imposes no limitation on the right of a purchaser who has acquired coal land from the United States to sell the same after he has become the owner of the land. The absence, however, of a limitation on the power to sell after acquisition affords no ground for saying that the express prohibition of the statute against more than one entry by the same person should not be enforced according to its plain meaning. This clearly follows, since the right to sell that which one has lawfully acquired neither directly nor indirectly implies the authority to unlawfully acquire in violation of an express prohibition." *United States* v. *Keitel*, 211 U. S. 370, 389.

Upon the same line of reasoning we find no reason for supposing that Congress intended by the act of 1904 to remove the restriction upon more than one entry by the

same person, because it imposed none upon alienation after the right to a patent had accrued by a good-faith location.

But it is said that the restriction upon the right to make more than one entry by the same person applied only to entries made under *the three preceding sections,* i. e., §§ 2347, 2348 and 2349. That this peculiar limitation has no material significance, we have already pointed out, its presence in the section being due to the fact that § 2350 and the preceding three sections, constituting the original act of 1873, were placed in the midst of a chapter embracing many other provisions in no wise related to the entry of coal lands. It is, however, to be borne in mind that this act of 1904 is but an amendment to the act of 1900, which extended these sections of the general coal entry law to the district of Alaska. The three acts are in *pari materia* and must be read together, and no part of the previously existing law upon the same subject is to be regarded as inoperative unless no other construction of the later legislation is reasonable.

The single object of Congress in the act of 1904 was to provide for the sale of coal lands which had not been surveyed. The provisions for the sale of such coal lands, in or out of Alaska, which had been surveyed, so that entries could be made "by legal subdivision," had already been covered by the general law which had been extended to Alaska. The conditions in Alaska were but temporary. When the coal land there should be brought under the system of surveys which prevailed in the better settled parts of the country, the act of 1904 would cease to be operative, having nothing to which it could apply. The legislation, read in the light of the situation and of the uniform policy which had so long prevailed of prohibiting more than one entry to one person, makes it plain that Congress did not intend to except the unsurveyed coal lands of Alaska from the operation of the restrictions which attached to

the sale of the surveyed coal lands in Alaska and elsewhere.

The judgment must be reversed and the case remanded for further proceedings, not inconsistent with this opinion.

*Reversed.*