UNITED STATES v. HOME COAL & COKE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

No. 3,775.

MINES AND MINERALS (§ 11*)—COAL LANDS—VALIDITY OF ENTRY.

Rev. St. §§ 2347–2350 (U. S. Comp. St. 1901, pp. 1440, 1441), authorizing the entry of coal lands, contain no provision requiring an applicant to state that the entry is for his sole use and benefit, and such an entry by a qualified person is not invalid because made in part for the benefit of others who are also qualified to make the entry, and there is no purpose to evade the restrictions as to quantity.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 14, 17; Dec. Dig. § 11.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit in equity by the United States against the Home Coal & Coke Company and the Baldy Coal Company. Decree for defendants, and complainant appeals. Affirmed.

This action was brought by the United States to cancel a patent for the E. ½ of the S. E. ¼ of section 23, township 32, range 64, Las Animas county, Colo., issued to Samuel Haigh, November 14, 1904. The patent was based upon private entry No. 327 made by Haigh August 30, 1904, under section 2347, R. S. U. S. (U. S. Comp. St. 1901, p. 1440), which section reads as follows:

"Sec. 2347. Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall, upon application to the register of the proper land office, have the right to enter, by legal subdivisions, any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority, not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands, where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road."

Section 2350, R. S. U. S. (U. S. Comp. St. 1901, p. 1441), bearing upon the same subject, is as follows:

"Sec. 2350. The three preceding sections shall be held to authorize only one entry by the same person or association of persons; and no association of persons, any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions; and all persons claiming under section twenty-three hundred and forty-eight shall be required to prove their respective rights, and pay for the lands filed upon within one year from the time prescribed for filing their respective claims; and upon failure to file the proper notice, or to pay for the land within the required period, the same shall be subject to entry by any other qualified applicant."

The following is the application of Haigh for private entry of the land in question:

### "Application for Private Entry of Coal Land.

"I, Samuel Haigh, hereby apply, under the provisions of the Revised Statutes of the United States relating to the sale of coal lands of the United States to purchase E. ½ S. E. ¼ of section 23 in township 32 S. of range 64 W. of the 6th P. M., in the district of lands subject to sale at the land office at Pueblo, Colorado, and containing 80 acres; and I solemnly swear that no portion of said tract is in the possession of any other party; that I am twenty-one years of age, and that my father, William Haigh, declared his intention to become a citizen of the United States when I was a minor, of the age of eight years (...... citizen of the United States), (or have declared my intention to become a citizen of the United States), and have never held or purchased lands under said act, either as an individual or as a member of an association; and I do further swear that I am ...... well acquainted with the character of said described land, and with each and every legal subdivision thereof, ...... having frequently passed over the same; that my knowledge of said land is ...... such as to enable me to testify understandingly with regard thereto; that from knowledge and belief each and every legal subdivision of said land contains large deposits of coal and is chiefly valuable therefor, and is more valuable for coal mining than for agricultural purposes; that there is not to my knowledge, within the limits thereof, any vein or lode of quartz or other rock in place, bearing gold, silver or copper,

and that there is not within the limits of said land, to my knowledge, any, valuable deposit of gold, silver or copper; so help me God.

"Samuel Haigh.'

"State of Colorado,

  "Las Animas County—ss.:

  "Subscribed and sworn to before me this 24th day of August, 1904.

  "[Notarial seal.]                    Amos F. Hollenbeck, Notary Public.

  "My commission expires December 10, 1905."

The nonmineral affidavit was as follows: ·

## "Nonmineral Affidavit.

"C. D. S.–3.

"State of Colorado,

    "County of Las Animas—ss.:

  "I, Samuel Haigh, of lawful age, being duly sworn, on oath, say that I am a citizen of the United States, and a resident of Las Animas county, in the state of Colorado, my post office address being at Trinidad in said county; that I am the identical person who has, under the provisions of the Revised Statutes of the United States relating to the sale of coal lands of the United States, made application to purchase the E. ½ S. E. ¼ of section 23 in township 32 S. of range 64 W. west of the 6th P. M. in the district of lands subject to sale at the land office at Pueblo, Colorado; that I am well acquainted with said land, and with each and every legal subdivision thereof, having frequently passed over the same; that my actual, personal knowledge of such land is such that as to enable me to testify understandingly in regard thereto; that no portion of said tract is in the possession of any other party; that said land contains large deposits of coal, and said tract and each and every legal subdivision thereof is chiefly valuable therefor, and more valuable for coal mining than for agricultural purposes; that there is not to my knowledge, within the limits thereof, any vein or lode of quartz or other rock in place, bearing gold, silver or copper, and that there is not to my knowledge, within said lands, any valuable deposit of gold, silver, copper, or mineral other than coal. So help me God.          Samuel Haigh.

"State of Colorado,

    "County of Las Animas—ss.:

  "I hereby certify that the foregoing nonmineral affidavit was subscribed and sworn to before me, and in my presence, by the above named affiant, a creditable person, who is personally known to me this 24th day of August, 1904, at my office at Trinidad, Colo., within the Pueblo land district.

  "My commission expires December 10th, 1905.

  "[Notarial seal.]      ,      Amos F. Hollenbeck, Notary Public."

Outside of the affidavit of citizenship, there was no other representation or statement made by Haigh to the officers of the United States having in charge the issuance of patents for coal lands, than were contained in the application and nonmineral affidavit above set forth.

The only ground alleged in the bill filed in this action upon which the United States seeks to have the patent canceled is that Haigh did not enter the land in question for his own use and benefit, but partly for the benefit of John D. Sherman, William O. Sherman, and George W. Haigh, the latter a brother of Samuel Haigh, and the defendant corporations. In this connection, the bill further alleges:

  "(4) That before, and at the time, he, the said Samuel Haigh, made his application to purchase said land, as aforesaid, said John D. Sherman and William O. Sherman and George Haigh hired and induced him, the said Samuel Haigh, so to do. That it was then and there agreed by and between John D. Sherman and William O. Sherman, George Haigh, and said entryman, Samuel Haigh, that John D. Sherman and W. O. Sherman were to pay and furnish one-half of the purchase price of said land and to pay for one-half of the improvements thereon and that George Haigh and the entryman, Samuel Haigh, were to pay and furnish the other half of said purchase price of

said land; it being then and there further agreed by and between them, the said Samuel Haigh and George Haigh and William O. Sherman and John D. Sherman, that, upon the said Samuel Haigh so procuring said land, he, the said Samuel Haigh, would immediately transfer to William O. Sherman and John D. Sherman a one-half interest in said land and that George Haigh and Samuel Haigh would retain for themselves the other one-half interest."

There is no allegation in the bill that either of the Shermans or George Haigh were in any wise disqualified from purchasing coal land under the provisions of sections 2347 and 2350, above quoted, either individually or as members of an association.

The defendant corporations answered the bill, and proofs were taken. The case subsequently came on for hearing upon pleadings and proof, and the court upon such hearing dismissed the bill for want of equity; whereupon the United States appealed the case to this court; assigning as error the dismissal of the bill.

The evidence established the fact that on September 3, 1904, Samuel Haigh conveyed an undivided one-half interest in the land in question, by warranty deed, to John D. Sherman and William O. Sherman, jointly, for the alleged consideration of $1; that on December 12, 1904, the defendant the Home Coal & Coke Company was incorporated with John D. Sherman, Samuel G. Haigh, George W. Haigh, and William O. Sherman as incorporators; that on December 19, 1904, Samuel Haigh, John D. Sherman, and William O. Sherman, jointly, conveyed said land by quitclaim deed to the Home Coal & Coke Company for an alleged consideration of $12,000; that John D. Sherman and William O. Sherman are the holders and owners of practically all the stock of the said Home Coal & Coke Company; that they are now operating a coal mine on said land in the name of the defendant the Baldy Coal Company, under a written lease from the defendant the Home Coal & Coke Company: and that on September 3, 1904, four days after the application of Samuel Haigh to purchase the land in question as coal land, and on the same day that he conveyed a half interest in the land to John D. Sherman and William O. Sherman, Samuel Haigh, John D. Sherman, and William O. Sherman executed and delivered a trust deed to the public trustee of Las Animas county, Colo., conveying the land in question for the purpose of securing a promissory note, bearing even date therewith, payable to the order of the American Savings Bank of Trinidad, Colo., two years after the date thereof, for the principal sum of $1,600, borrowed money, with interest thereon from date thereof until paid at 10 per cent. per annum, payable annually. In order to raise the money for the purchase of the land in question from the United States, Haigh borrowed the sum of $1,600 from the American Savings Bank of Trinidad, Colo.; John D. Sherman and William O. Sherman signing his note for that sum. This trust deed or mortgage was given to secure that note. Whether the conveyance of September 3, 1904, of a half interest in the land to the Shermans, was in pursuance of a previous contract that they should have a half interest in the land, or was given to the Shermans simply as security to protect them against their liability on the note given to the Savings Bank and for supplies furnished to the Haighs while they were developing the claim, is left by the evidence somewhat in doubt. The defendants offered no testimony, and the evidence of Samuel G. Haigh and George W. Haigh is contradictory; they testifying at one place that it was given merely as security, and at another place giving testimony from which the inference might be drawn that it was in pursuance of an original agreement to the effect that the Shermans should have half the land.

When George W. Haigh was on the witness stand, he testified as follows: "Q. Who made this entry? A. My brother, Mr. Samuel G. Haigh.

"Q. Why didn't you make it? A. I had used my filing; I couldn't make it."

E. B. Lacy and Butler Disman, Asst. U. S. Attys., both of Denver, Colo. (Harry E. Kelly, of Denver, Colo., on the brief), for the United States.

John A. Gordon, of Denver, Colo., and J. C. Bell, of Trinidad, Colo., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and W. H. MUNGER, District Judge.

CARLAND, Circuit Judge (after stating the facts as above). Taking the most favorable view of the case made by the appellant, we are of the opinion that the judgment below was right. Giving to the evidence all that may be claimed for it by counsel for the appellant, the case may be stated as follows: That Samuel Haigh at the time he made his application to purchase the coal land in question agreed to convey one-half thereof to John D. Sherman and William O. Sherman, and that his brother, George W. Haigh, was to have some interest in the remaining portion of the land, and that therefore the entry of the land was not made for the sole use and benefit of Samuel Haigh. The bill wholly fails to allege, and the proof wholly fails to show, that John D. Sherman or William O. Sherman had ever purchased any coal land from the United States, either individually or as members of any association; nor is there any allegation or proof that the Home Coal & Coke Company or the Baldy Coal Company, as associations, had ever purchased any coal land from the United States. In regard to George W. Haigh there is the testimony quoted in the foregoing statement of facts to the effect that he had used his filing, giving this as the reason why he did not make the application to purchase the land in question rather than his brother Samuel. The trouble with this testimony is that the bill did not allege as a ground of vacating the patent that any of the parties interested in the land had already purchased all the coal land they were entitled to purchase from the United States. The statement of George W. Haigh that he had used his filing is also indefinite and uncertain as to whether he ever purchased any coal land in fact from the United States. This kind of evidence falls far short of the requirement of the Supreme Court in the case of Maxwell Land Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, wherein it is said:

"In this class of cases the respect due to the patent, the presumption that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which this is attempted are clearly stated and fully sustained by the proof."

The case is argued by counsel for appellant as if Samuel Haigh had stated, in the affidavits to which he made oath when he made his application for an entry of the land, that said entry was made for his own use and benefit; that the land officers were deceived thereby; and that consequently, if the statement was false, it constituted a fraud upon the United States. An examination of the application and of the nonmineral affidavit, where any such statement would be found if it was made at all, demonstrates that no such statement was ever made, and there is no law or regulation requiring it to be made in cases of this kind. It is no doubt true that the officers of the land office have the right to assume, when an individual makes an application to purchase coal lands, that it is made with knowledge of the law regulating

such purchases, and that the applicant is applying to purchase the land for his own use and benefit, because the law restricts the amount of land that can be purchased by an individual to 160 acres and by an association to 320 acres.

Counsel for appellant relies upon the cases of United States v. Trinidad Coal & Coking Company, 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640; Hyde v. Bishop Iron Company, 177 U. S. 289–290, 20 Sup. Ct. 592, 44 L. Ed. 771; United States v. Keitel, 211 U. S. 370, 29 Sup. Ct. 123, 53 L. Ed. 230; and United States v. Colorado Anthracite Company (May 27, 1912), 225 U. S. 219, 32 Sup. Ct. 617, 56 L. Ed. 1063.

In United States v. Trinidad Coal & Coking Company, 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640, the United States brought a suit in equity for the purpose of having set aside certain patents for coal lands situate in the Pueblo land district, Colo. The entries upon which the patents were based were made under the same law as the entry in this case. It was held in the case cited that where officers, stockholders, and employés of the Trinidad Coal & Coking Company formed a scheme, whereby they made entries in their individual names, but really for the benefit of such corporation, of vacant coal lands of the United States, and the scheme was carried out and patents issued to such individuals, who immediately transferred the legal title to the corporation which bore all the expenses and cost of obtaining the lands, and some of the members of which had previously taken the benefit of the statute relating to the disposal of public coal lands, such transactions were in violation of sections 2347, 2348, and 2350, R. S. U. S. The case was decided upon demurrer to the bill. Mr. Justice Harlan said in delivering the opinion of the court:

"It is the case of an association seeking to evade an act of Congress by using for its own benefit the names of both its members and employés to obtain from the government vacant coal lands which it could not legally obtain upon entries made in its own name and which it was expressly forbidden to enter by reason of some of its members having previously taken the benefit of the statute."

An examination of the whole opinion demonstrates, we think, that the reason the entries were held to be fraudulent was that the association, the Trinidad Coal & Coking Company, by the scheme admitted by the demurrer, had obtained from the United States more land than it was entitled to obtain under the law regulating the purchase of coal lands. The facts were entirely different from those in the case at bar, and we do not think the decision rules this case.

The case of Hyde v. Bishop Iron Company, 177 U. S. 289, 20 Sup. Ct. 592, 44 L. Ed. 771, arose under section 2262, R. S. U. S., which required a pre-emption applicant to make affidavit that "he has not directly or indirectly made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself," and also provided that, "if any person taking such oath swears falsely in the premises, he shall forfeit the money which he may have paid for such

land, and all right and title to the same." Mr. Justice Brewer, in delivering the opinion of the court, said:

"It was this statute which the Land Department found the applicant had violated, in that he was seeking to enter a portion of the land, not solely for his own benefit, but also in part for the benefit of others."

Manifestly, this case has no application to the one under consideration.

United States v. Keitel, 211 U. S. 370, 29 Sup. Ct. 123, 53 L. Ed. 230, was a criminal case. The indictment was for a conspiracy under section 5440, R. S. U. S., and charged the 11 defendants with conspiring with certain named persons and others unknown to illegally obtain the title to certain coal lands belonging to the United States. The case of the United States v. Trinidad Coal & Coking Company, supra, was approved, and it was held that under sections 2347–2350, R. S. U. S., a person who was qualified to enter coal lands for his own benefit was prohibited from making an entry ostensibly for himself but in fact as agent for another who was disqualified, and an agreement to obtain land for a disqualified person through entries made by qualified persons constituted the offense of conspiracy against the United States under section 5440. It will thus be seen that it is the obtaining of coal land by one who is qualified for another person or association who is disqualified, that constitutes the fraud against the United States. The facts in the case last cited are wholly different from the facts in the case at bar, and in neither the case of United States v. Coal Company nor United States v. Keitel was it decided that a qualified person may not make an entry of coal land for a person who is also qualified.

United States v. Colorado Anthracite Company, supra, was a case in which the Anthracite Company was seeking to recover from the United States the sum of $3,200 paid by one Stoiber at the time he made entry of certain coal lands in the state of Colorado and which entries had been held invalid by the commissioner of the general land office. The question decided in the case was whether the facts found disclosed that Stoiber and the Anthracite Company were engaged in an attempt to acquire the land fraudulently in contravention of the coal land law. If they were, the company would not be entitled to repayment under the act of June 16, 1880, c. 244, § 2, 21 Stat. 287 (U. S. Comp. St. 1901, p. 1415), which provides that where, from any cause, an entry of public land "has been erroneously allowed and cannot be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of purchase money, and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land." It was held that the expression "erroneously allowed," used in the statute, denotes some mistake or error on the part of the land officers whereby an entry is allowed when it should be disallowed, and not some fraud or false pretense practiced on them whereby an applicant appears to be entitled to the allowance of an entry when in truth he

is not. Mr. Justice Van Devanter, in holding that the entry was not fraudulent, said:

"While the coal land law does not expressly prohibit an entry by one person for the benefit of another, it does limit the quantity of land that may be acquired thereunder by one person to 160 acres, and the quantity that may be acquired by an association of persons to 320 acres and, in exceptional instances, 640 acres; and it declares that its sections 'shall be held to authorize only one entry by the same person or association of persons; and no' association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other' lands under their provisions.' These restrictions, as this court has held, forbid individuals and associations from acquiring public coal land in excess of the quantities prescribed. whether directly by entries in their own names or indirectly by entries made for their benefit in the names of others. And so, one person cannot lawfully make an entry in the interest of another who has had the benefit of the law, or in the interest of an association where it or any of its members has had the benefit thereof, or in the interest of a person or an association where he or it has not had such benefit, but is seeking, through entries made or to be made by others in his or its interest, to acquire a greater quantity of land than is permitted by the law. United States v. Trinidad Coal & Coking Company, 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640; United States v. Keitel, 211 U. S. 370, 29 Sup. Ct. 123, 53 L. Ed. 230; United States v. Forrester, 211 U. S. 399, 29 Sup. Ct. 132, 53 L. Ed. 245; United States v. Munday, 222 U. S. 175, 32 Sup. Ct. 53, 56 L. Ed. 149. But there is no prohibition, express or implied, against an entry by a qualified person for the benefit of another person or association where he or it is fully qualified to make the entry in his or its own name, and is not seeking to evade the restrictions in respect of quantity.

"A corporation is an association of persons within the meaning of the law (United States v. Trinidad Coal & Coking Company, supra), and therefore the company here, which was a Colorado corporation, lawfully could have made the entry in question in its own name, unless it or some member of it had had the benefit of the coal land law or was seeking, through this and other like entries, to acquire coal land in excess of the quantity prescribed. In other words, the fact that the entry was made in the name of Stolber for the benefit of the company does not, without more, establish that it was forbidden or fraudulent. There is no finding that the company or any member of it had had the benefit of the law or was seeking to acquire more than this 160 acres. So, for aught that appears, there was no legal obstacle to the entry being made in the company's name, and the fact that it was not may have been due to matters not affecting its validity or integrity."

The case last cited, we think, must rule the case now under consideration. It is direct authority for the proposition that there is no prohibition, express or implied, in the coal land law against an entry by a qualified person for the benefit of another person or association where he or it is qualified to make the entry in his or its own name and is not seeking to evade restrictions in respect of quantity. There is no allegation or proof that there was any such intention on the part of Samuel Haigh or on the part of any of the other parties at the time the entry herein was made. Our conclusion is that the record wholly fails to show facts which would warrant the setting aside of the patent.

The decree of the court below must be affirmed, and it is so ordered.